Douglas H. TURNEY, Plaintiff–
Appellant,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION; and William Mark Bon-
ney, Trustee for the bankruptcy estate of
Calvin E. Pierce, Defendants–Appellees.

No. 93–7005.

United States Court of Appeals,
Tenth Circuit.

March 8, 1994.

Douglas S. Pewitt (Betty Outhier Williams, with him on the briefs), of Robinson, Locke, Gage, Fite & Williams, Muskogee, Oklahoma, for Plaintiff–Appellant.

Steven W. Soule (Kenneth G.M. Mather, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma: Ann S. DuRoss, Assistant General Counsel; Richard J. Osterman, Jr., Senior Counsel; Joan E. Smiley, Counsel; and Barbara Sarshik, Counsel, Federal Deposit Insurance Corporation, Washington, DC: and Pauli D. Loeffler, Federal Deposit Insurance Corporation, Oklahoma City, Oklahoma, with him on the briefs), Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, for Defendants–Appellees.

Before LOGAN and MOORE, Circuit Judges, and ROGERS, District Judge.*

JOHN P. MOORE, Circuit Judge.

Douglas H. Turney (Debtor), who filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, challenges the district court's order which held in each proceeding adjudicating his case he was afforded "all necessary and required due process of law." Although present and represented by counsel at all proceedings, Debtor insists he did not interpret the eventualities which arose from the particular hearings in the manner they played out. On appeal, Debtor urges we expand the meaning of "adequate notice" to include his definition so he

---

* The Honorable Richard D. Rogers, Senior District Judge for the District of Kansas, sitting by designation.

may achieve a redetermination of the net value of a claim included in a creditors' confirmed plan for his estate. Finding no basis in the record or the law for this proposition, however, we affirm.

## I.

Because the underlying and prolix facts of this case have little bearing on its outcome, we eschew their recitation here except to highlight those affecting our review. Debtor's bankruptcy case became entwined with that of a business partner, Calvin E. Pierce, who had filed a voluntary petition under Chapter 7 and whose Trustee, William Bonney, sought to recover under 11 U.S.C. § 548 certain assets Mr. Pierce had allegedly transferred to Debtor (Pierce Claim). These assets represented various tracts of land Debtor had purchased and packaged as "escrow accounts" for which he sought further financial participation. The bankruptcy court modified the automatic stay in Debtor's case to allow Gary Barnes, the Trustee, to participate in the Pierce adversary proceeding.

After the exclusive period for Debtor to propose a plan expired, the Federal Deposit Insurance Corporation, one of Debtor's creditors, filed a Creditor's Plan of Operation and Liquidation Plan of Operation (FDIC Plan) which proposed systematically liquidating Debtor's property to satisfy all claims against the Turney estate. Any remaining property would revert to the Debtor. Article 3 of the FDIC Plan specifically addressed the Pierce Claim. It read:

3.4 *Class 6*

3.4.1 The Claim of the Pierce Trustee is the subject of a presently pending adversary proceeding in the United States Bankruptcy Court for the Eastern District of Oklahoma. *The Pierce Trustee will be*

*given a judgment for the net value of Calvin E. Pierce's interest in the escrows which are the subject matter of the adversary complaint,* the Pine Valley Escrow, Arnall Escrow, Teenie–Weenie Escrow, C & N Escrow, Kiamichi Escrow, and Long Creek Lake Escrow ("Pierce Escrows") *as of the transfer dates, plus interest calculated at the rate of ten percent (10%) per annum and recovery of costs, including a reasonable attorney's fee.* This claim is impaired.[1]

(emphasis added). The FDIC Plan further provided a procedure for claimants to file amended claims and to modify claims to account for post-petition accrued interest and costs, including attorney fees.

In subsequent hearings, when represented by counsel, Debtor attempted to file his own reorganization plan, objected to the FDIC Plan, and was permitted to intervene as a nominal party in the Pierce adversary proceeding. Significantly, although Debtor filed an untimely objection to the FDIC Plan, no specific objection was lodged against the Pierce Claim. Debtor did not appeal the order confirming the FDIC Plan.

Shortly after the bankruptcy court entered an order confirming the FDIC Plan, the FDIC filed a motion to clarify the FDIC Plan Trustee's duties and obligations or alternatively to amend the Chapter 11 plan or for relief under Fed.R.Civ.P. 60(b), Bankruptcy Rule 3008, and 11 U.S.C. § 502(j). The motion was prompted by the increased valuation of the Pierce Claim from its initial calculation of approximately $584,711.74 to the figure of $1 million submitted by Pierce Trustee, Mr. Bonney. The FDIC contended the basis for the new claim was tenuous and sought the court's instruction to prevent irreparable loss to the Debtor's estate. After a "rather spirited discussion" in which Debt-

---

1. The FDIC Plan further provided:

3.4.2 The Pierce Trustee may elect by the Effective Date to retain the ownership interest attributable to Calvin Pierce in the Pierce Escrows and accordingly offset the judgment award identified in paragraph 3.4.1 by the net value of the interests calculated as of the Effective Date. Any excess judgment amount exceeding the net values of the Pierce Escrows as of the Effective Date will be treated as a Class 7 Claim to be satisfied in full.

3.4.3 Alternatively, the Trustee may elect to reject the escrow ownership interests. In that case, *the entire judgment amount will be treated as a Class 7 claim and will be entitled to payment in full. This Court will retain jurisdiction to determine the net value of the Pierce Escrows as of the Effective Date.* Determination of this Claim, including the power to compromise, will be the Plan Trustee's responsibility.
(emphasis added).

or was represented by counsel, the bankruptcy court clarified:

3. The confirmed Plan established the claim of Trustee Bonney on behalf of the Pierce estate in an "approximate" amount. Further, the Amended Claim clearly is increased by more than simply "post-petition accrued interests and costs, including attorney's fees." Additionally, the Plan, by simply granting a judgment in favor of Trustee Bonney for the net value of Pierce's interest in the various escrows, forecloses any challenge by the Defendants in the pending adversary proceeding, being the Plan Trustee and now Mr. Turney, to the existence of a claim by Trustee Bonney. However, it does leave open to question the net value of Pierce's interest in the escrows. Thus, the amount of the claim is yet to be determined. The appropriate vehicle for such a determination is currently pending in the Calvin E. Pierce bankruptcy case styled as *Bonney v. Gary Barnes, Plan Trustee for the Douglas Turner Bankruptcy Estate and Douglas Turney,* Adv. No. 90–7062.

The bankruptcy court concluded it was, therefore, unnecessary to amend the FDIC Plan because although the Plan designated the claim as a judgment, "the amount of the claim has not yet been determined" and would properly be determined in the Pierce adversary proceeding as provided. The Pierce Claim was later settled for $774,428.25 "in consideration for the FDIC's release of any and all claims of whatever kind or nature in and to the Pine Valley Partnership or its assets."

Newly retained counsel for Debtor subsequently filed a motion to modify the confirmed plan. The bankruptcy court denied the motion, concluding the proposed compromise evaluated under the criteria expressed in *American Employers' Ins. Co. v. King Resources Co.,* 556 F.2d 471, 475 (10th Cir. 1977),[2] was in the "best interests of the estate" and citing *In re Carson,* 82 B.R. 847, 853 (Bankr.S.D.Ohio 1987).

In its order denying Debtor's appeal of the bankruptcy court's refusal to modify the confirmed plan under 11 U.S.C. § 1127(b), the district court aimed its review at the target Debtor presented:

[A]ppellant states that there is no factual question involved in this appeal. Appellant's contention is that his appeal is solely a legal issue of whether or not he was denied due process to determine "net value" of a claim owed by him to appellee Bonney.

Concluding the bankruptcy court's findings of fact were uncontested and not clearly erroneous, the district court held Debtor "has been represented by counsel throughout these proceedings, and the Bankruptcy Court, in all these proceedings has afforded all necessary and required due process of law to the appellant. The fact the appellant may not have availed himself of that due process and/or is in disagreement with its result is not a sufficient reason to relitigate the bankruptcy proceedings."

## II.

Conceding he received formal notice of each of the matters marking the course of his case, Debtor vociferates the notice at issue in this appeal is not the pulp upon which the words are written but the very meaning of the words themselves which did not satisfactorily apprise him of the finality of the con-

---

**2.** The Bankruptcy Court recited some of these factors:

(1) the balance between the likelihood of plaintiff's and defendant's success should this case go to trial vis-a-vis the "concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures."

(2) the prospect of complex and protracted litigation if the settlement is not approved.

(3) the proportion of the class members who do not object or who affirmatively support the proposed settlement.

(4) the competency and experience of counsel who support the settlement.

(5) the relative benefits to be received by individuals or groups within the class.

(6) the nature and breadth of releases to be obtained by directors and officers as a result of the settlement.

(7) the extent to which the settlement is truly the product of "arms-length" bargaining, and not of fraud or collusion.

firmed plan. Debtor relies on *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1500, 123 L.Ed.2d 74 (1993).

Aside from its involving a Chapter 11 reorganization, *Pioneer* has no relevance to the facts or issue in this appeal. In that case, creditors of a Chapter 11 debtor attempted to extend the bar date for filing their late proofs of claim on the ground of excusable neglect, claiming counsel was "experiencing 'a major and significant disruption' in his professional life caused by his withdrawal from his former law firm," which prevented his access to the case file. *Id.* at ——, 113 S.Ct. at 1492–93. Against this factual setting, the Court elucidated the meaning of the phrase "excusable neglect," concluding that

> the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at ——, 113 S.Ct. at 1498.

■ There is no fact present or principle announced in *Pioneer* to support Debtor's position here. Indeed, Debtor received notice and showed up, accompanied each time by retained counsel. Due process requires no more. "The fundamental requisites of due process consist of notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *In re A.H. Robins Co.,* 107 F.R.D. 2, 6 (D.Kan.1985) (citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). "The kind of notice required is one 'reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action.'" *Bank of Marin v. England,* 385 U.S. 99, 102, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

---

**3.** In its objection to confirmation of Debtor's reorganization plan, the FDIC noted Debtor had

■ These due process concerns equally apply to the exercise of bankruptcy jurisdiction. *Matter of Boomgarden,* 780 F.2d 657, 660 (7th Cir.1985). "In bankruptcy proceedings, both debtors and creditors have a constitutional right to be heard on their claims, and 'the denial of that right to them [is] the denial of due process which is never harmless error.'" *Id.* at 661 (citations omitted).

In its order confirming the FDIC Plan, the bankruptcy court specifically found "[p]roper notice of the Creditors' Plan was given to all creditors and parties in interest." Debtor does not contest that finding or any other factual basis for denial of his motion to reopen. In the face of over two years of parrying to arrive at a settlement during which creditors complained about Debtor's failure to list claims and serious undervaluation of claims,[3] the bankruptcy court concluded "[a] change of counsel and strategy does not warrant a modification of the Plan."

■ Unless the bankruptcy court's findings of fact are clearly erroneous, we must embrace them although plenary review must substantiate its conclusions of law. *Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Debtor does not challenge the factual findings underpinning the bankruptcy court's legal conclusions; but, instead, he asks we fabricate a new law of due process to relieve him of the process he indeed received. We decline the invitation.

We would further note Section 102(1)(A) of the Bankruptcy Code provides:

> In this title—
>
> (1) "after notice and a hearing", or similar phrase—
>
> > (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances.

11 U.S.C. § 102(1)(A). Although Debtor ignores § 102(1)(A) in his argument, its meaning permeates the Code:

---

placed a $70,000 value on the Pierce Claim.

The rule of construction stated in section 102(1) is vital to the operation of the entire Bankruptcy Code, for it effectuates two significant policies: (1) that there be a separation of administrative and judicial functions, with the bankruptcy judge freed from involvement in the former and able to concentrate on the latter; and (2) that bankruptcy cases be handled in a speedy and expeditious manner. The rule of construction governing use of the phrase "after notice and a hearing" in the multitude of instances in which it appears in the Code implements these central policies by restricting the occasions on which a full hearing is conducted, while insuring that all persons who should have notice do indeed receive notice.

2 *Collier on Bankruptcy* ¶ 102.02 (15th ed. 1993).

That Debtor is disgruntled over the manner of his participation in the resolution of the Pierce Claim does not negate *the fact* of his presence at those proceedings. That he "never interpreted the provision [¶ 3.4.1] as foreclosing defense portions of the Pierce claim" is also not cognizable to alter the effect of the fundamental due process he was afforded. At best, Debtor's contentions reflect nothing more than a failure to comprehend what was set before him. No concept of due process can be invoked to protect him from that failure. Consequently, the factual findings of the bankruptcy court and its conclusions of law foreclosing Debtor's "eleventh hour" effort to reopen the confirmed plan, as affirmed by the district court, are not clearly erroneous.

AFFIRMED.