PUBLISH

**UNITED STATES COURT OF APPEALS**

Filed 1/21/97

**TENTH CIRCUIT**

---

In re: BARTON INDUSTRIES, INC.,

Debtor,

-----------------------------------------------

AMERICAN BANK AND TRUST COMPANY, an Oklahoma banking corporation,

Plaintiff - Appellee,
Cross-Appellant,

v.

JARDINE INSURANCE SERVICES TEXAS, INC., a foreign corporation, and TRANSAMERICA INSURANCE FINANCE CORPORATION, a foreign corporation,

Defendants - Appellants,
Cross-Appellees.

Nos. 96-6020 and 96-6032

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. CIV-95-210-L)**

---

G. Blaine Schwabe, III (Sarah A. Hall with him on the briefs), of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Oklahoma, for Appellants.

Michael A. Bickford (Joe Heaton with him on the briefs) of Fuller, Tubb & Pomeroy, Oklahoma City, Oklahoma, for Appellee.

Before **SEYMOUR,** Chief Judge, **ANDERSON**, and **BRORBY**, Circuit Judges.

**ANDERSON**, Circuit Judge.

This case involves a dispute between two secured creditors over rights to unearned, return insurance premiums ("return premiums") involved in the Chapter 11 bankruptcy plan of Barton Industries, Inc. ("Barton"). The core issues on appeal are: (1) whether the appellants, Transamerica Insurance Finance Corporation ("TIFCO") and Jardine Insurance Services Texas, Inc. ("Jardine"), received adequate notice that TIFCO's security interest in the return premiums would be extinguished by operation of the bankruptcy plan; and (2) a determination of the priority between competing security interests in the return premiums held by TIFCO and appellee, American Bank and Trust Company ("ABT").

On cross motions for summary judgment, the bankruptcy court held that appellants, TIFCO and Jardine, did not receive sufficient notice that TIFCO's security interest in the return premiums would be affected by Barton's bankruptcy plan, and therefore TIFCO retained a valid security interest. The court also determined that appellee, ABT, had a prior security interest in part of the return premiums, and accordingly awarded ABT $39,780.00. The court held that TIFCO and Jardine should

retain the remaining balance of return premiums.  See Appellants' App. Vol. I at 216-18 (Bankr. Ct. Order).  The district court affirmed, and this appeal followed.  We affirm.

## I.  Background

Prior to filing for bankruptcy, Barton entered an insurance premium finance agreement with the appellant, TIFCO.  Premium finance agreements generally allow distressed companies to borrow money in order to purchase casualty insurance policies.  In this case, TIFCO loaned Barton $119,338.25 to pay the premiums on policies with various insurers.  See Appellants' App. Vol. I at 133 (premium finance agreement).  Rather than giving the money directly to Barton, TIFCO advanced the money to appellant Jardine, an insurance agent, for remittance to the insurance carriers on behalf of Barton.  See Id. at 128, ¶¶ 3-4 (TIFCO Aff.).

As part of the premium finance agreement, Barton agreed to repay the money advanced by TIFCO with finance charges.  To secure repayment, Barton assigned to TIFCO any and all unearned return premiums.  Id. at 132 (premium finance agreement).  Return premiums are those premiums paid in advance by the insured, but unearned in the event the insurance coverage is reduced or canceled, and therefore refunded by the insurance companies.

Another part of the premium finance agreement required Barton to pay TIFCO $39,780.00 as a down payment.  Barton borrowed the money for this down payment from

-3-

its primary creditor, appellee ABT, under a pre-existing credit agreement which they entered on February 10, 1993. Appellants' App. Vol. I at 78-92 (February 10th Agreement); id. at 195-96 (Rusco Aff.). The February 10th Agreement granted ABT a security interest in all intangible assets of Barton, and confirmed prior security interests in all contract rights and general intangibles, which arguably included return insurance premiums. Id. at 80-81, ¶¶ 3.1, 3.2.4. Shortly after ABT loaned Barton the money for the down payment, the parties amended the February 10th credit agreement to specify that ABT had a security interest in return insurance premiums. Id. at 108, ¶ 3.1 (June 4th Amendment).

The chronology of these transactions is important to determine the priority of the security interests. ABT and Barton entered their general credit arrangement on February 10, 1993. TIFCO and Barton entered the premium finance agreement on May 21, 1993. ABT loaned Barton the money for the down payment to TIFCO on May 27, 1993. ABT and Barton amended the February 10th credit agreement on June 4, 1993.

On August 4, 1993, Barton filed a voluntary Chapter 11 petition, and shortly thereafter canceled the insurance policies. After the insurance policies were canceled, the insurance companies repaid $60,842.29 in unearned premiums. They gave the return premiums to Jardine, who then remitted $54,486.04 to TIFCO. Appellants' App. Vol. I at 122, ¶¶ 7-8.

On June 15, 1994, ABT commenced an adversary proceeding against TIFCO and Jardine, alleging that the Chapter 11 plan conveyed to ABT all of the return premiums, or provided ABT a security interest in the premiums superior to TIFCO's interest in them. ABT further argued that TIFCO had notice of and an opportunity to respond to the Chapter 11 plan, and was therefore bound by its terms. TIFCO replied that its lien on the return premiums passed through the bankruptcy proceedings unaffected, and that it did not receive meaningful notice of, and was therefore not bound by, the bankruptcy plan.

## II. Discussion

We review the grant of summary judgment by the bankruptcy court de novo, applying the same legal standards as those applied by the bankruptcy and district courts. Hollytex Carpet Mills, Inc. v. Oklahoma Employment Sec. Comm'n (In re Hollytex Carpet Mills, Inc.), 73 F.3d 1516, 1518 (10th Cir. 1996); CCF, Inc. v. First Nat'l Bank & Trust Co. of Okmulgee (In re Slamans), 69 F.3d 468, 472 (10th Cir. 1995). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Stat-Tech Int'l Corp. v. Delutes (In re Stat-Tech Int'l Corp.), 47 F.3d 1054, 1057 (10th Cir. 1995).

### A. Due Process

ABT challenges the bankruptcy and district courts' holdings that TIFCO's security interest in the return premiums remained valid because ABT failed to provide TIFCO and Jardine meaningful notice that the bankruptcy plan would affect the security interest. Appellants' App. Vol. I at 216-17 (Bankr. Ct. Order). Generally, due process requires:

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citations omitted). These due process requirements apply equally to bankruptcy proceedings, see Bank of Marin v. England, 385 U.S. 99, 102 (1966); Turney v. Federal Deposit Ins. Co., 18 F.3d 865, 868 (10th Cir. 1994), and a creditor's claim is not subject to a confirmed bankruptcy plan when the creditor is denied due process because of inadequate notice. Reliable Elec. Co., Inc. v. Olson Const. Co., 726 F.2d 620, 622-23 (10th Cir. 1984).

A confirmed Chapter 11 bankruptcy plan may extinguish a lien such as TIFCO's. See 11 U.S.C. § 1141(c); Federal Deposit Ins. Co. v. Union Entities (In re Be-Mac Trans. Co., Inc.), 83 F.3d 1020, 1025 (8th Cir. 1996).[1] However, the bankruptcy court may only

---

[1]TIFCO and Jardine erroneously argue in their briefs that TIFCO's allowed secured claim could only be avoided through an adversary proceeding or formal objection. While both are acceptable methods of challenging a secured creditor's interest, ABT has never disputed that TIFCO had an allowed secured claim. See ABT Reply Br. at 6-7. Rather, the issue is whether the Chapter 11 plan itself altered TIFCO's lien rights, which the plan may do provided TIFCO participated in the proceedings and received

(continued...)

confirm a Chapter 11 plan after notice that "is appropriate in the particular circumstances." See 11 U.S.C. §§ 102(1), 1128(a); see also 2 Collier on Bankruptcy ¶ 102.02 (15th ed. 1993). In order to satisfy due process, TIFCO and Jardine had to receive notice that specified the treatment of their class of claim, and allowed them to make an informed judgment about Barton's Chapter 11 plan. See 11 U.S.C. §§ 1123(a)(3), 1125(a). Because TIFCO and Jardine admittedly received the required notices in this case, see Appellants' Response Br. at 13, the issue is whether, under the particular circumstances, the notices they received were "of such nature as reasonably to convey the required information." Mullane, 339 U.S. at 314; see also In re Linkous, 990 F.2d 160, 162-63 (4th Cir. 1993) (holding plan properly vacated with respect to Chapter 13 creditor who received actual notice of proceedings, but did not receive adequate notice that court would value secured claim at the confirmation hearing).

While a close case, we agree with the bankruptcy and district courts that TIFCO and Jardine did not receive sufficient notice, and Barton's Chapter 11 plan therefore did not affect TIFCO's interest. The plan stated that all allowed claims, other than those specifically mentioned, were Class 4 entitled only to a pro rata share of funds from the Creditor Trust if and when such funds became available. See Appellants' App. Vol. III at 605, 611 (Plan). However, the plan and the disclosure statement sent to TIFCO and

<hr>

[1](...continued)
adequate notice. See Union Entities, 83 F.3d at 1025; In re Penrod, 50 F.3d 459, 462-64 (7th Cir. 1995).

Jardine did not specifically refer to the return premiums, TIFCO's interest therein, or the plan's effect on them.

The only reference pertaining to the return premiums was in an agreement (the ERC agreement), which was incorporated into the plan, but not sent to TIFCO or Jardine. The ERC agreement provided that Barton would "sell and convey to ABT without representation or warranty the assets listed on Schedule 2.1 free and clear of all liens, claims and encumbrances . . . ." Appellants' App. Vol. II at 280 (ERC Agreement). Schedule 2.1 listed all tangible or intangible assets of Barton in which security interests had been granted in favor of ABT, including all contract rights and general intangibles. Id. at 299. This obscure reference did not provide TIFCO and Jardine sufficient notice about the treatment of their particular class of claim or adequate information to make a reasonable judgment about the plan.

While creditors have a responsibility to take an active role in protecting their claims, see Heins v. Ruti-Sweetwater, Inc., 836 F.2d 1263, 1265-67 (10th Cir. 1988), ABT erroneously relies on Turney v. Federal Deposit Ins. Corp., 18 F.3d 865 (10th Cir. 1994), for the proposition that TIFCO and Jardine were not reasonably diligent in evaluating the notices they received. In Turney, we rejected the due process arguments of a Chapter 11 debtor who conceded he received formal notice of the pertinent matters in the case, but argued that the notices did not sufficiently convey the required information. Unlike the present case, the reorganization plan in Turney specifically mentioned the

disputed claim and its treatment under the plan, and the debtor was actively involved in every stage of the proceedings. ABT's other arguments and authorities are similarly distinguishable. Considering all the circumstances of this specific case, TIFCO and Jardine did not receive adequate notice of Barton's plan, and therefore their claims are not affected by the plan.

## B. Priority of Security Interests

Because we determine that TIFCO's interest was not affected by Barton's reorganization plan due to insufficient notice, we must now determine the priority of TIFCO's and ABT's pre-petition security interests in the return premiums. ABT and TIFCO each argues that its security interest takes priority over the other, entitling it to the entirety of the return premiums. The bankruptcy and district courts effectively resolved the convoluted priority issues in the case by determining that ABT held a prior security interest in the return premiums to the extent of the amount it loaned Barton for the down payment, i.e., $39,780.00, and that TIFCO held a security interest in the remainder of the return premiums, requiring TIFCO and Jardine to give $39,780.00 to Barton, and allowing them to retain the remaining return premiums.

Article 9 of the Uniform Commercial Code (U.C.C.) does not directly apply in this case because the security interests were "in or under [a] policy of insurance." See 12A

Okla. Stat. Ann. tit. 12A § 9-104(f).[2]  Where the U.C.C. is inapplicable, security interest

disputes may be resolved by reference to:  existing statutes and pre-code case law, Leger

Mill Co., Inc. v. Kleen-Leen, Inc., 563 P.2d 132, 136 (Okla. 1977); analogy to the U.C.C.,

Woodson v. Ford Motor Credit Co. (In re Cook), 637 P.2d 588, 591 (Okla. 1981)

(applying U.C.C. case law to title certificate case); and reference to case law from other

jurisdictions.  See, e.g.,  Garrison v. Bechtel Corp., 889 P.2d 273, 282 (Okla. 1995)

(applying rule from other jurisdictions to agency issue not previously addressed in

Oklahoma).

ABT has a valid security interest in the unearned premiums to the extent it loaned

Barton $39,780 as a down payment to purchase insurance premiums.  Although not

explicitly determined by the bankruptcy court, ABT complied with the Oklahoma pre-

code method for perfecting security interests in chattel mortgages and the method

recognized by the U.C.C., i.e., it publicly filed notice of its security interest.

---

[2]We resolve the security interest issues by reference to state law.  See Octagon Gas Systems, Inc. v. Rimmer (In re Meridian Reserve, Inc.), 995 F.2d 948, 953-57 (10th Cir. 1993).  We reject TIFCO and Jardine's request to apply Texas law, and apply Oklahoma law.  While TIFCO and Jardine reside in Texas and entered their agreement with Barton in Texas, Barton and ABT reside and do business in Oklahoma, Barton and ABT entered their security agreement in Oklahoma, and the bankruptcy proceedings occurred in Oklahoma.  See generally Restatement (Second) of Conflicts of Law § 251 (1971) (stating rule that validity and effect of security interests not directly governed by U.C.C. are determined by law of the state with most significant relationship to the parties, property, and security interests).

Alternatively, ABT perfected according to the method recognized in other states that have no specific insurance premium financing statutes: it executed the agreement and/or had possession of the agreement.[3]  ABT loaned Barton the money for this down payment under a pre-existing credit agreement dated February 10, 1993 which gave ABT a security interest in all of Barton's general intangibles, and which was amended June 4, 1993 specifically to include unearned insurance premiums.  Similarly, TIFCO has a valid security interest in the unearned premiums because TIFCO loaned Barton $119,338.25 to pay the premiums, and Barton assigned to TIFCO any and all unearned return premiums.

Thus, both TIFCO and ABT had perfected, valid security interests in the return premiums.  Absent statutory authority to the contrary, Oklahoma relies on the common-law principle of first in time first in right to resolve competing security interests in the same collateral.  See, e.g., Bank America Commercial v. Oklahoma Natural Gas Co. (In re N-Ren Corp.), 773 P.2d 1269, 1271 (Okla. 1989); Leger Mill, 563 P.2d at 136; United Tire & Investment Co. v. Maxwell, 215 P.2d 541, 543 (Okla. 1950).  Applying this

_____

[3]See, e.g., In re Smith, 167 B.R. 895, 898 (Bankr. E.D. Mo. 1994) (holding security interest in insurance premiums perfected by creation of security interest);  A-1 Credit Corp v. Big Squaw Mountain Corp. (In re Big Squaw Mountain Corp.), 122 B.R. 831, 836-839 (Bankr. D. Me. 1990) (applying Maine common law and law of other jurisdictions to determine that filing notice or taking possession of insurance policies not required to perfect security interest); In re Cooper, 104 B.R. 774, 775 (Bankr. S.D. W.Va. 1989) (holding security interest enforceable at time of creation when state statutory law silent on perfection); Thico Plan, Inc. v. Maplewood Poultry Co. (In re Maplewood Poultry Co.), 2 B.R. 550, 554 n.5 (Bankr. D. Me. 1980) (discussing Maine common law which required possession of evidence of the pledge for perfection of a pledge).

principle, ABT has a prior perfected security interest in $39,780.00 of the return premiums and is entitled to that amount, while TIFCO has a security interest in the remaining return premiums to which TIFCO and Jardine are entitled. Other arguments raised by the parties are without merit.

For the foregoing reasons, we AFFIRM the decision of the district court.