**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

IN RE:  CARL G. DAVIS,

Debtor.

_____

COUNTRYWIDE HOME LOANS,

Plaintiff - Appellant,

v.

CARL G. DAVIS,

Defendant - Appellee.

No. 05-6214

(Bankruptcy Appellate Panel)

(BAP No. WO-04-057)

(Bankruptcy No. 00-19757 NLJ)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

Countrywide Home Loans ("CHL") appeals a decision of the Bankruptcy

Appellate Panel ("BAP") reversing a decision of the United States Bankruptcy

Court for the Western District of Oklahoma.  The bankruptcy court had entered

judgment in favor of CHL, holding that its mortgage lien on debtor Carl G.

_____

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Davis's principal residence was not avoided by the order of confirmation in Davis's Chapter 13 bankruptcy case. The BAP reversed that judgment, concluding that prior orders of the bankruptcy court had preclusive effect and barred CHL from asserting that its mortgage lien survived confirmation of the plan. We have jurisdiction pursuant to 28 U.S.C. § 158(d) and we affirm.

## BACKGROUND

On November 30, 1999, CHL and Davis entered into a loan transaction. Davis executed a promissory note secured by a mortgage on his primary residence. CHL recorded the note and mortgage with the Oklahoma County Clerk on December 15, 1999. Davis subsequently defaulted on the loan.

On August 24, 2000, CHL filed a foreclosure petition against Davis in Oklahoma state court. After experiencing difficulty serving Davis with notice of the foreclosure petition, CHL ultimately filed proof of publication in the Journal Record on December 22, 2000.

Meanwhile, on December 1, 2000, Davis filed a petition for relief under Chapter 13 of the Bankruptcy Code, along with a proposed Plan. Davis included the following sentence in the paragraph of the Plan entitled "Secured Claims": "Countrywide Home Loans is secured by an unperfected mortgage that will be avoided upon plan completion." Appellant's App. at 22. Immediately below that appeared the following:

| Name of Creditor: | Collateral: | Total Claim: | Allowed Secured: | Int. Rate: | Monthly Payment: |
|---|---|---|---|---|---|
| COUNTRYWIDE HOME | unperfected mortgage | $61,565.58 | 0.00 | 0.00% | 0.00 |

Id.

On December 12, 2000, the clerk of the bankruptcy court mailed a "Notice of Commencement of Case Under Chapter 13 of the Bankruptcy Code," along with a copy of Davis's Chapter 13 Plan, to all creditors. These included CHL, with its address listed as P.O. Box 8239, Van Nuys, CA 91409. The notice informed CHL of the date for the meeting of creditors, the date for the hearing on the confirmation of the Plan, and the deadline for filing a proof of claim.

CHL did not appear at the meeting of creditors on January 11, 2001, and did not file an objection to confirmation of Davis's Plan. CHL did file a proof of claim on February 9, 2001, asserting CHL was the holder of a secured claim in the amount of $68,233.41. CHL attached to its proof of claim copies of the note and the mortgage, both dated November 30, 1999, initialed and signed by Davis. Neither the note nor the mortgage bore any indication that either had been filed of record with the Oklahoma County Clerk, nor did CHL file any other document which supported its assertion that it had a perfected security interest in Davis's residence. Davis did not file an objection to CHL's proof of claim.

On February 27, 2001, the bankruptcy court confirmed Davis's Plan, without objection from CHL, and entered an order confirming the Chapter 13 Plan

on February 28, 2001. CHL did not appeal that order, with the result that it became final on March 12, 2001. Neither CHL nor any other party filed a motion to revoke the confirmation order on grounds of fraud within the succeeding 180-day period permitted under 11 U.S.C. § 1330.[1]

On December 10, 2001, more than one year after Davis filed for bankruptcy with a Plan alleging that CHL did not have a perfected mortgage, and more than nine months after the bankruptcy court's order confirming Davis's Plan, CHL filed a motion for relief from the automatic stay, requesting authority to proceed with the pending state court foreclosure. CHL attached to that motion copies of the note and mortgage bearing the file stamp of the Oklahoma County Clerk, indicating they had been recorded on December 15, 1999. On March 26, 2002, the bankruptcy court conducted a hearing on CHL's motion, during which CHL's counsel apparently abandoned the specific remedy sought in CHL's written motion (relief from the automatic stay and authority to proceed with its foreclosure petition under state law) and instead sought three "alternative" remedies: First, he sought modification of the Plan "based on a misrepresentation

---

[1]Section 1330 provides in pertinent part:

> (a) On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

11 U.S.C. § 1330(a).

for equitable reasons," Tr. of Proceedings at 4, Appellant's App. at 31; second, he asked the court "to require an adversary proceeding [under Fed. R. Bankr. P. 7001][2] before [CHL's] lien can be avoided," id. at 5, Appellant's App. at 32; or, third, he asked the court to refuse to discharge the debt. CHL's counsel concluded by stating, "[w]e are asking for anything to help here." Id. at 6, Appellant's App. at 33.

At the conclusion of the hearing, the court denied CHL's motion, stating, "I think the order confirming this plan was over a year ago. And for that reason the Court denies the relief asked by Countrywide." Id. at 14, Appellant's App. at 41. The bankruptcy judge who had presided over the matter up to and including the hearing retired shortly after the hearing was concluded. Accordingly, a different judge signed the two written orders, dated October 10, 2002, and December 19, 2002, memorializing the court's oral ruling at the end of the hearing.

The October 10, 2002, order states that "the motions filed by [CHL] in this case are denied for the reasons as stated by this Court on the record." Order, Appellant's App. at 43. The December 19, 2002, order states the following:

---

[2]Rule 7001 provides in pertinent part:

The following are adversary proceedings:
. . . .
(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property . . . .

Fed. R. Bankr. P. 7001(2).

All parties being present by counsel, announced ready, and the Court proceeded to receive evidence and argument of Counsel, including an oral modification to the Motion for Relief, wherein [CHL] alleged that Rule 7001 requires an adversary proceeding to accomplish the lien avoidance by debtor. Upon full consideration thereof, [the Court] finds and orders that the motions filed by [CHL] in this case are denied for reasons as stated by this Court on the record, specifically that Rule 7001 is not applicable and an adversary proceeding is not required in this case.

IT IS THEREFORE ORDERED that the Motion for Order of Abandonment and Motion for Relief From Automatic Stay, as orally modified, filed by Countrywide Home Loans, d/b/a America's Wholesale Lender are denied.

Order at 1, Appellant's App. at 44.

CHL did not appeal either of those orders, and they became final orders in the case. Additionally, CHL did not file a motion under either Fed. R. Bankr. P. 9023 or 9024, incorporating, respectively, Fed. R. Civ. P. 59 and 60.[3] Instead, more than two months later, on February 27, 2003, CHL commenced the instant new adversarial proceeding. CHL asked the bankruptcy court to determine that its claim for $68,233.41, plus interest, costs and fees, is a secured claim, with Davis's residence as collateral. CHL further asked the court to determine that CHL has a valid lien against that residence that, even if unenforceable for the duration of the Plan, shall become enforceable upon discharge of the Plan in the full amount, plus interest from April 1, 2000, costs and fees.

---

[3]Fed. R. Civ. P. 59 permits motions for a new trial or for amendment of the judgment. Rule 60 permits relief from a judgment or order on various grounds, including mistake, inadvertence, and fraud.

Citing Andersen v. UNIPAC-NEBHELP (In re Andersen), 179 F.3d 1253, 1257 (10th Cir. 1999) and Plotner v. AT&T Corp., 224 F.3d 1161, 1168-73 (10th Cir. 2000), Davis argued that CHL's claim was precluded by *res judicata*, because it had been resolved against CHL in the confirmation process or by the bankruptcy court's rulings on CHL's motion for relief, and that CHL failed to object to confirmation of the Plan, nor did it appeal the confirmation order or any other order. CHL responded that the Plan provision purporting to avoid CHL's lien on Davis's residence upon completion of the Plan violates 11 U.S.C. § 1322(b)(2), which provides that a debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." Id. CHL further argued that nothing in the confirmation order avoids its lien; that, pursuant to Fed. R. Bankr. P. 7001(2), Davis was obligated to file an adversary proceeding if he questioned the validity and secured status of CHL's lien; and that CHL timely filed its proof of claim, to which Davis never objected, which constitutes "prima facie evidence of the validity and amount of the claim." Id. 3001(f). Finally, CHL argued In re Andersen is distinguishable and/or unavailing given other decisions by the Bankruptcy Court in Oklahoma.

As indicated, the bankruptcy court, in a lengthy opinion, agreed with CHL and reinstated its lien on the Davis property.[4] It was that opinion which the BAP reversed and which is the subject of this appeal. The parties largely reiterate the arguments they made before the bankruptcy court.

## DISCUSSION

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision. We accept the Bankruptcy Court's factual findings unless they are clearly erroneous." Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete), 412 F.3d 1200, 1204 (10th Cir. 2005) (citation omitted). "We review the grant of summary judgment by the bankruptcy court de novo, applying the same legal standards as those applied by the bankruptcy [court] and [the BAP]." Am. Bank & Trust Co. v. Jardine Ins. Servs. Tex., Inc. (In re Barton Indus., Inc.), 104 F.3d 1241, 1245 (10th Cir. 1997). Summary judgment is proper where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Stat-Tech Int'l Corp. v. Delutes ( In re Stat-Tech Int'l Corp.), 47 F.3d 1054, 1057 (10th Cir. 1995).

We agree with the BAP that the bankruptcy court failed to accord the proper preclusive effect to the court's prior orders on CHL's motion for a stay or

_____

[4]The bankruptcy judge who ruled in CHL's favor in the decision under review was the same judge who signed the two orders denying CHL's earlier motion for a stay.

-8-

for other relief.[5]  "Under Tenth Circuit law, claim preclusion applies when three elements exist:  (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits."  MACTEC, Inc. v. Gorelick, 427 F.3d 821, 831 (10th Cir. 2005).  If those requirements are met, "res judicata is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit."  Id. (quoting Yapp v. Excel Corp., 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)); see also Plotner, 224 F.3d at 1168.  The doctrine of claim preclusion serves the "fundamental policies" of "finality, judicial economy, preventing repetitive litigation and forum-shopping."  Id.

There can be little doubt that the first two elements of claim preclusion are satisfied in this case.  The parties are identical and the bankruptcy court's prior orders were final judgments on the merits.  With respect to the third element— same cause of action—our circuit has "adopted the 'transactional approach' of Restatement (Second) of Judgments § 24."  Id. at 1169.  Accordingly, "'a cause of

---

[5]For the first time at oral argument, CHL argued that, in entering summary judgment in favor of CHL, the bankruptcy court was properly exercising its authority under Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60 permitting relief from a judgment or order on various grounds. CHL made no such argument in its opening brief.  "[W]e have held that '[t]he failure to raise an issue in an opening brief waives that issue.'"  Silverton Snowmobile Club v. U.S. Forest Serv., 473 F.3d 772, 783 (10th Cir. 2006) (quoting Anderson v. U.S. Dep't of Labor, 422 F.3d 1155, 1174 (10th Cir. 2005)); see also State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994).  CHL has accordingly waived that argument.

action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation.'" Id. (quoting Nwosun v. Gen. Mills Rests., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997)). It is clear that CHL asserts the same cause of action in the instant proceeding as it did in its motion for relief from the automatic stay before the bankruptcy court. It seeks to have its lien recognized as surviving Davis's Chapter 13 proceeding. CHL struggled to articulate the precise legal theory by which it could accomplish that goal before the bankruptcy court, so it admitted before the bankruptcy court it was

> really here kind of with our hat in our hands asking for some type of equity and remedy . . . It just is not fair for a mistake in the plan like this to go forward. . . . If there's any room in the code or case law to allow the Court to do something to make this fair, it's asked for . . . . We are asking for anything to help here.

Tr. of Proceedings at 5-6, Appellant's App. at 32-33. That broad request for any remedy to salvage its lien constitutes the same cause of action before the bankruptcy court and, on appeal, before us, wherein CHL again seeks to have its lien salvaged.

Finally, we must consider whether CHL had a full and fair opportunity to litigate this matter before the bankruptcy court. We conclude that it did. Not only did it present every conceivable theory on which it might prevail in connection with its motion for a stay, it clearly had multiple opportunities to

protect its lien rights during the Chapter 13 proceeding itself. In December 2000

CHL received Davis's proposed Plan, which clearly indicated that CHL's claim

was to be treated as unsecured because of an unperfected mortgage, which,

accordingly, would be "avoided upon plan completion." Appellant's App. at 22.[6]

CHL failed to attend the meeting of creditors or the hearing on confirmation of

the Plan, nor did it challenge the Plan once it was confirmed, including during the

six-month period following confirmation in which challenges for fraud are

permitted. And while it filed a proof of claim, the actual documents filed only

appeared to verify Davis's assertion that CHL did not have a perfected security

interest. Further, it failed to appeal the bankruptcy court's orders denying its

motion to stay. Despite these multiple opportunities to pursue the claim it now

pursues, CHL simply failed to utilize them, or, having used them, failed to prevail

on them or to mount an appeal. It may not now have yet another attempt to

prevail on a claim already resolved adversely to it by the bankruptcy court.[7]

---

[6]While CHL now suggests in its brief to us that it did not receive notice of the Plan, it is clear that CHL did not argue in the bankruptcy court that it failed to receive notice. Indeed, in the hearing on CHL's motion for a stay, its counsel conceded he was "not raising any notice issues at all." Tr. of Proceedings at 3, Appellant's App. at 30. CHL may not raise a due process argument for the first time on appeal. Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992).

[7]Because of the unusual procedural posture, and unique fact pattern, of this case, we need not delve into the issue of whether and/or how liens securing a mortgage on the debtor's residence survive in the myriad scenarios presented by Chapter 13 proceedings. Needless to say, the courts are not in agreement. See,

(continued...)

-11-

For the foregoing reasons, in the very unique and unusual circumstances of this case, the decision of the BAP is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[7](...continued)
e.g., Shook v. CBIC (In re Shook), 278 B.R. 815, 824 (B.A.P. 9th Cir. 2002) (noting the various approaches taken by bankruptcy courts); see also Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995) (majority and dissenting opinions). Given this uncertainty, it would behoove creditors to be vigilant about protecting their interests in their secured claims and fully utilizing the bankruptcy provisions available to them until Congress or the Supreme Court brings greater clarity to the matter.

We accordingly emphasize that this case is confined to its facts. Our holding is very narrow, given the unusual circumstances of this case, including the mistakes and/or failures of CHL and others.

05-6214 *In re Davis; Countrywide Home Loans v. Davis*
**O'BRIEN**, J., dissenting

> The noble Brutus
> Hath told you Caesar was ambitious:
> If it were so, it was a grievous fault,
> And grievously hath Caesar answered it . . . .

> *   *   *

> And Brutus is an honourable man . . . .

William Shakespeare, *Julius Caesar*, Act III, scene ii.

Procrastination, like ambition, is apparently a grievous fault. And, like Caesar,

grievously hath Countrywide answered it. Not only grievously, but unnecessarily.

At a gut level this case pits a cozener against a dawdler. More to our

purpose it pits the finality provision of the Bankruptcy Code, 11 U.S.C. § 1327,[1]

against code provisions protecting mortgages on a principal residence from

modification (in this case cancellation). 11 U.S.C. §§ 1322(b)(2) & (5),[2]

---

[1] 11 U.S.C. § 1327 (Effect of confirmation) provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

[2] 11 U.S.C. §§ 1322(b)(2) and (5) (Contents of plan) provide:

(continued...)

1328(a)(1).[3] The confirmed bankruptcy protection plan in this case derived from, at best, Davis' careless and convenient error; at worst, a cold and calculated fraud.  At bottom, the debtor misrepresented the amount, status and character of a secured debt — the mortgage lien securing a purchase money loan on his principal residence.  His acts of deceit have netted him a nearly $70,000.00 windfall at the expense of Countrywide. The bankruptcy court would have no part of it.  Nor should we.  We should ignore the Bankruptcy Appellate Panel and affirm the bankruptcy court's carefully considered and well reasoned opinion

---

[2](...continued)

(b) Subject to subsections (a) and (c) of this section, the plan may–
. . . .

**(2)** modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
. . . .

**(5)** notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

[3] 11 U.S.C. § 1328 (Discharge) provides in relevant part:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
    (1) provided for under section 1322 (b)(5) of this title . . . .

concluding that Countrywide's mortgage lien survives this bankruptcy.[4]  Since the majority goes another way, I respectfully dissent.

In consideration of a purchase money loan, Davis executed a note and mortgage to Countrywide on November 30, 1999.  The mortgage was properly recorded on December 15, 1999, in Oklahoma County, Oklahoma.  Davis made only four payments on the note, all in early 2000.  Countrywide initiated a foreclosure action in state court in August 2000.  Davis avoided service of process, requiring Countrywide to serve him by posting notice of the foreclosure suit on the door of the residence.

After Countrywide began the foreclosure action Davis filed a petition for relief under Chapter 13 of the Bankruptcy Code.  He filed a plan with his petition listing the Countrywide's secured debt not as a home mortgage but as a secured claim, further described as an "unperfected mortgage that will be avoided upon

---

[4] We look past the BAP and independently review the bankruptcy court's decision.  *Lampe v. Williamson (In re Lampe)*, 331 F.3d 750, 753 (10th Cir. 2003); *In re Albrecht,* 233 F.3d 1259, 1260 (10th Cir. 2000).  We review a grant of summary judgment by the bankruptcy court *de novo*, applying "the same legal standards as those applied by the bankruptcy and district courts, i.e. those set forth in FED. R. CIV. P. 56(c)."  *Hollytex Carpet Mills, Inc. v. Okla. Employment Sec. Comm'n (In re Hollytex Carpet Mills Inc.)*, 73 F.3d 1516, 1518 (10th Cir. 1996).

plan completion."[5] Given Davis' history with Countrywide, that statement was at best disingenuous. In any event it was untrue.

At the outset of his Chapter 13 case Davis had an obligation to "file a list of creditors, and . . . a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs . . . ." 11 U.S.C. § 521(1). Since the plan was signed with a declaration "that the foregoing statements in this Chapter Plan [are] true & correct under penalty of perjury," (Appellant's App., Doc. 4 at 23), Davis' obligation was to *accurately* represent the information contained therein.

Countrywide timely filed its proof of claim for $68,233.41 on February 9, 2001. That filing triggered a second obligation for Davis if he thought the claim was incorrect — he was required to object to the proof of claim, FED. R. BANKR. P. 3007, and file an adversary proceeding to determine validity and proper amount of the claim. FED. R. BANKR. P. 7001(2).

---

[5] According to Davis' "Combined Response to Motion to Dismiss . . .," filed in response to Countrywide's motion for sanctions, "[a]t the direction of [Davis'] Counsel, [Davis] made three (3) separate trips to the county court house to obtain all mortgages filed against his real estate. On each occasion, [Davis] was unable to locate [Countrywide's] mortgage." (Combined Response to Motion to Dismiss at 1, *In re Carl G. Davis*, Bankr. W.D. Okla. 00-19757 (Aug. 11, 2005)). *See San Juan County, Utah v. United States*, 420 F.3d 1197, 1202 n.2 (10th Cir. 2005) (under Rule 201, FED. R. EVID., an appellate court can take judicial notice of documents not appearing in the record). Davis was, at the very least, on inquiry notice with respect to a mortgage he signed. A proper check of the land records would have revealed the mortgage to have been properly and timely recorded, and therefore perfected. Such record checking was the responsibility of Davis' attorney and could not be fulfilled by sending a client with no apparent experience (and a self-serving interest) to do title research. Davis is represented by different counsel on appeal.

Davis failed on both scores, but his failings are rewarded. Davis has been permitted to "morph the status of a secured lien into an unsecured lien by simply stating it is so in [his] plan." *Altegra Credit Co. v. Dennis (In re Dennis)*, 286 B.R. 793, 795 (Bankr. W.D. Okla. 2002); *see Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 555-56 (5th Cir. 1985) ("It would be anomalous indeed were we to permit [the debtor] a windfall for his mischaracterization of [the creditor's] claim in the plan as unsecured."). The purpose of bankruptcy proceedings is to *protect* a debtor, not *reward* him for his manipulation of the process. Gamesmanship and unethical conduct are subject to sanction by bankruptcy courts under Rule 9011, Federal Rules of Bankruptcy Procedure.[6] *See In re Lemons*, 285 B.R. 327, 332-33 (Bankr., W.D. Okla. 2002).[7] Nothing in the bankruptcy code or rules permits giving preclusive effect to fraud.

It is true Countrywide failed to file a perfected copy of the note and mortgage with its initial proof of claim. Particularly after seeing its mortgage listed in the plan as "unperfected," Countrywide should have been more diligent in filing a proper proof of claim. However, the point of perfection is to protect innocent third parties — strangers, not parties, to the original transaction. Davis clearly knew he executed a note and mortgage with Countrywide only one year

---

[6] The bankruptcy court in this case ordered Davis and his counsel to appear before it at a later time "prepared to show cause why sanctions should not be imposed in this matter." (Appellant's App., Doc. 16 at 125.) The bankruptcy court's comments about sanctions, and discussion in this opinion about counsel's conduct, must be read to refer only to Davis' original counsel, not appellate counsel.

[7] The opinion in *Lemons* was by The Honorable Niles L. Jackson, the same bankruptcy judge who granted judgment in favor of Countrywide.

prior to filing the bankruptcy petition; his signature appears on both documents, and his initials are on each page.

The bankruptcy judge's thorough analysis is persuasive and reaches the correct result. He acknowledged the tension between the procedural and substantive requirements of the code, and its finality provisions. He properly resolved the tension by making the plan binding, thus allowing Countrywide no distribution on its claim under the plan, but permitting Countrywide's lien to survive the bankruptcy as a secured lien.

In reaching its decision, the bankruptcy court relied in part on *Universal American Mortgage Company v. Bateman (In re Bateman),* 331 F.3d 821 (11th Cir. 2003). The factual background in *Bateman* is similar to the case at hand. In *Bateman*, the mortgage company failed to object to the amount provided for its claim in the plan, and did not appeal the subsequent confirmation order. 331 F.3d at 823. It later sought relief from the bankruptcy court, filing a motion to dismiss the plan due to its failure to comply with the bankruptcy code. *Id.*

The Eleventh Circuit noted the case "pit[] the procedural requirements and substantive provisions of 11 U.S.C. §§ 502(a), 1322, and 1325 of the bankruptcy code, against the *res judicata* effect of a confirmed plan under 11 U.S.C. § 1327." *Id.* at 825. The court reviewed the respective responsibilities of the debtor and creditor. It noted the debtor's responsibility to list claim amounts and their proposed treatment under the plan, the creditor's duty to file a proof of claim, and finally the debtor's correlative obligation to file an objection if he wished to contest the amount or validity of the claim. *Id.* at 827.

The court then focused on the nature of a secured creditor's claim. While a secured creditor "need not do anything during the course of the bankruptcy proceeding because it will always be able to look to the underlying collateral to satisfy its lien," *id.*, it must file a timely proof of claim if it wishes to receive payments under the confirmed plan. *Id.*; *see In re Tarnow,* 749 F.2d 464, 465 (7th Cir. 1984) (Acknowledging the "long line of cases . . . [which] allow[] a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt."). The court held § 1322(b)(2) "specifically prohibits any modification of a homestead mortgagee's rights in the Chapter 13 plan . . . . [T]he plan is prohibited from reducing the mortgagee's secured claim." *Bateman*, 331 F.3d at 826 (internal citations omitted). Thus, the court concluded, "a secured creditor's lien survives a contrary plan confirmation." *Id.* at 830. The secured creditor retains its rights pursuant to the terms of the mortgage, despite the terms of the plan. *Id.* at 834.

At the same time, the Eleventh Circuit acknowledged the preclusive effect afforded to confirmed plans under § 1327, and held a creditor could not collaterally attack a plan to which it had not earlier objected. *Id.* at 822, 829-30. The creditor remains bound by the plan during its operation, including the number and amount of any payments it will or will not receive during the plan. *Id.* at 829-30. The creditor's secured claim, however, remains unaffected by the plan "and survives the bankruptcy unimpaired." *Id.* at 832. The secured creditor retains its rights and after the automatic stay provided for in the plan is lifted, is

"entitled to act in accordance with the rights as provided in the mortgage to satisfy its claim." *Id.* at 834.

The bankruptcy court here followed the same analytical process, reviewing the nature of Countrywide's claim, and the respective duties of creditor and debtor in a bankruptcy proceeding. It gave appropriate effect to the substantive provisions of the code and the procedural requirements of the rules. The court relied on the language of § 1322(b)(2) in finding Davis was prohibited from modifying Countrywide's rights simply by inserting a contrary phrase in his plan. The mortgage obligation was not dischargeable in bankruptcy, because the last payment was due after the conclusion of the term of the plan. *See* 11 U.S.C. § 1328(a)(1).

The court also focused on Davis' obligation to object to Countrywide's proof of claim. Countrywide filed a timely proof of claim under Rule 3001(f), Federal Rules of Bankruptcy Procedure.[8] Countrywide's amended claim was "deemed allowed," 11 U.S.C. § 502(a), triggering Davis' obligation to object under § 502(a) and Rules 3007 and 7001(2), Federal Rules of Bankruptcy

_____

[8] Rule 3001(f) provides, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Subsection (d) states: "If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." FED. R. BANKR. P. 3001(d). Here, the original proof of claim was not accompanied by a properly perfected copy of the mortgage and note. The bankruptcy court allowed Countrywide to amend its claim, and ruled that once the claim was properly amended, it would be "deemed allowed." Countrywide timely filed its amended proof of claim.

Procedure. *See Simmons*, 765 F.2d at 554 (when debtor does not object, a claim is deemed allowed under a plan).

Finally, the bankruptcy court acknowledged the finality provisions of § 1327 and gave preclusive effect of the plan — to the extent it bound Countrywide to the terms of the plan and ruled Countrywide would not receive payments on its claim during the plan's operation. Consistent with the analysis in *Bateman*, it held that Countrywide's mortgage was unaffected by the plan and survived the bankruptcy.

Because we can affirm the court "on any grounds for which there is a record sufficient to permit conclusions of law, . . ." *Garcia v. Lemaster*, 439 F.3d 1215, 1220 (10th Cir. 2006), I would affirm the bankruptcy court's holding that § 1322 prohibits any modification of a homestead mortgagee's rights through a Chapter 13 plan, particularly a plan which contains a substantial misrepresentation as to the nature of a secured claim. I would further affirm its holding that Countrywide's lien survives the bankruptcy unimpaired, and at the conclusion of the plan Countrywide retains its rights to pursue appropriate action on its mortgage (foreclosure). Finally, I would affirm the court's holding that the plan has binding effect during its term.