254 F.3d 528 (4th Cir. 2001)
 In Re: REGIONAL BUILDING SYSTEMS, INCORPORATED, Debtor.
UNIVERSAL SUPPLIERS, INCORPORATED,Creditor-Appellant,
v.
REGIONAL BUILDING SYSTEMS, INCORPORATED,Debtor-Appellee.
 No. 01-1072
 UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
 Argued: June 5, 2001
Decided: June 29, 2001
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, District Judge. (CA-00-2555-WMN, BK-93-57521)COUNSEL ARGUED: Jay G. Ochroch, FOX, ROTHSCHILD, O'BRIEN & FRANKEL, L.L.P., Philadelphia, Pennsylvania, for Appellant. Linda Vojik Donhauser, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee. ON BRIEF: Prince Altee Thomas, FOX, ROTHSCHILD, O'BRIEN & FRANKEL, L.L.P., Philadelphia, Pennsylvania; Richard Goldberg, SHAPIRO & OLANDER, Baltimore, Maryland, for Appellant. E. Hutchinson Robbins, Jr., MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee.
 Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge, and Irene M. KEELEY, Chief United States District Judge for the Northern District of West Virginia, sitting by designation.
 Affirmed by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Chief Judge Keeley joined.
 OPINION
 WILKINSON, Chief Judge:
 
 
 1
 This case requires us to determine the effect of the confirmation of a Chapter 11 reorganization plan on a creditor's liens. Appellant maintains that since confirmation of a Chapter 13 plan fails to extinguish liens not addressed by the plan, see Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995), the same must be true with respect to confirmation of a Chapter 11 plan. Because the relevant provisions of Chapter 11 and Chapter 13 use different language and serve different purposes, we hold that appellant's lien was extinguished by confirmation of the underlying Chapter 11 plan. Accordingly, we affirm the judgment of the district court.
 
 I.
 
 2
 In 1992, Universal Suppliers and Regional Building Systems (RBS) entered into a consignment agreement whereby RBS granted Universal a security interest in certain home construction materials. In November 1993, RBS filed a voluntary petition for relief under Chapter 11 of the bankruptcy code. RBS listed Universal as the holder of a $358,871.71 claim, secured by collateral with a value of zero. Thus, the entire claim was only entitled to allowance as an unsecured claim because a lien is secured only up to the value of the underlying property. See 11 U.S.C. S 506(a).
 
 
 3
 It is undisputed that Universal knew of its claim against RBS. Indeed, Universal participated as a member of the official committee of unsecured creditors. And in August 1996, Universal filed two separate proofs of claim in RBS's bankruptcy case, asserting an unsecured nonpriority claim for $358,871.71. In April 1997, the bankruptcy court approved a settlement from an unrelated lawsuit which resulted in the payment of approximately $5 million to RBS. Universal now claims that its lien attaches to these settlement funds.
 
 
 4
 In May 1997, the bankruptcy court entered an order confirming RBS' Chapter 11 plan. The plan did not provide for retention of Universal's lien even though the $5 million settlement was now available to satisfy the claim. Rather, the plan classified Universal as a general unsecured creditor. Nevertheless, Universal failed to assert its lien at that time or otherwise object to confirmation of the plan. With respect to the $5 million against which Universal now asserts its lien, the plan stated that after certain other claims had been satisfied, Universal and the other unsecured creditors would receive a pro rata distribution of the remainder of the estate (including any remaining settlement funds).
 
 
 5
 After confirmation, a Plan Committee was formed to administer the covered properties. In December 1997, more than seven months after confirmation of the plan, Universal filed an amended proof of claim asserting a secured claim of roughly $740,000. The amended claim attempted to reclassify Universal's lien as secured and sought approximately $380,000 in interest, fees, and other charges, in addition to the $358,871.71 originally claimed. The Plan Committee opposed the reclassification of Universal's claim.
 
 
 6
 The bankruptcy court agreed with the Plan Committee, holding that Universal's lien rights were extinguished upon confirmation of RBS' Chapter 11 plan. See In re Regional Building Systems, Inc., 251 B.R. 274 (Bankr. D. Md. 2000). The bankruptcy court explained that any property of a debtor that is addressed by a Chapter 11 plan becomes free and clear of any claims not expressly preserved. Since the $5 million settlement fund that Universal identified as the target of its lien had been dealt with by RBS's confirmed Chapter 11 plan, and since neither the plan nor the order confirming the plan expressly preserved Universal's lien rights, the bankruptcy court held that Universal's lien had been extinguished. The district court subsequently affirmed the bankruptcy court's judgment, agreeing that Universal's lien was extinguished upon confirmation of RBS' Chapter 11 plan. This appeal followed.
 
 II.
 A.
 
 7
 We begin, as we must, with the text of the bankruptcy code. In rejecting Universal's arguments, the bankruptcy court relied on 11 U.S.C. S 1141(c), which states, in pertinent part, that:
 
 
 8
 [E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.
 
 
 9
 The bankruptcy court properly determined that all of the elements needed to invoke S 1141(c)'s "free and clear of all claims" language had been satisfied in this case. First, RBS submitted a Chapter 11 reorganization plan to the court. Second, the plan was confirmed by an order of the court, without any objection from Universal. Third, the property to which Universal now seeks to attach its lien was "dealt with by the plan." Specifically, the plan stated that after certain other claims had been paid, Universal and the other unsecured creditors would receive a pro rata share of the remainder of the estate, including any amounts left in the $5 million settlement fund. And fourth, neither the plan nor the order confirming the plan preserved Universal's lien rights. Rather, the plan classified Universal as a general unsecured creditor.
 
 
 10
 By the plain terms of S 1141(c), therefore, confirmation of RBS's Chapter 11 plan rendered the $5 million settlement fund "free and clear of all claims" not expressly preserved. Since Universal's lien was not preserved, it was extinguished by operation of law upon confirmation of RBS' plan. And we note that every other circuit court of appeals to have addressed this issue has reached the same conclusion. See Matter of Penrod, 50 F.3d 459, 463 (7th Cir. 1995) (holding that under S 1141(c), "unless the plan of reorganization, or the order confirming the plan, says that a lien is preserved, it is extinguished by the confirmation."); In re Be-Mac Transport Co. , 83 F.3d 1020 (8th Cir. 1996) (following Penrod); In re Barton Indus., Inc., 104 F.3d 1241 (10th Cir. 1997) (same).
 
 B.
 
 11
 Universal does not offer a different reading of the statute and cites no Chapter 11 cases which challenge this interpretation of S 1141(c). Rather, Universal claims that confirmation of a Chapter 11 plan cannot extinguish a lien where the plan makes no mention of the lien. In support, Universal references this court's decision in Cen-Pen Corp. v. Hanson, 58 F.3d 89 (4th Cir. 1995), for the proposition that a debtor must initiate an adversary proceeding in order to extinguish a lien.* Universal concedes that Cen-Pen involved a confirmed Chapter 13 plan rather than a Chapter 11 plan. It contends, however, that the provision at issue in Cen-Pen, 11 U.S.C.S 1327(c), is identical to S 1141(c).
 
 Section 1327(c) of Title 11 states that:
 
 12
 Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.
 
 
 13
 11 U.S.C. S 1327(c) (emphasis supplied).
 
 
 14
 Section 1141(c), in relevant part, states that:
 
 
 15
 [E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.
 
 
 16
 11 U.S.C. S 1141(c) (emphasis supplied).
 
 
 17
 Universal argues that the only difference between these two provisions is that S 1327(c) speaks in terms of property "provided for" by the plan while S 1141(c) speaks in terms of property "dealt with" by the plan. And according to Universal, the phrase"dealt with" and "provided for" are synonymous. See Rake v. Wade, 508 U.S. 464, 474 (1993). Even if this is the case, however, we think that Universal overlooks an important difference between these two statutory provisions.
 
 
 18
 Section 1327(c) states that the property covered by a Chapter 13 plan is free and clear of only those claims of creditors that the plan addresses. Under the plain terms of the statute, therefore, property of a Chapter 13 debtor can be subject to the continuing claims of creditors so long as those claims were not "provided for" by the debtor's Chapter 13 reorganization plan. Indeed, this was the crux of our CenPen decision where we held that "[i]f a Chapter 13 plan does not address a creditor's lien . . . that lien passes through the bankruptcy process intact, absent the initiation of an adversary proceeding." 58 F.3d at 94. Thus, had this been a case involving a confirmed Chapter 13 plan, Universal's lien would have been preserved since RBS's plan did not "provide for" the lien. See In re Deutchman, 192 F.3d 457, 461 (4th Cir. 1999) (Chapter 13 plan does not provide for a lien "simply by failing or refusing to acknowledge it or by calling the creditor unsecured.") (internal quotation marks omitted).
 
 
 19
 If under Chapter 13 a lien can be extinguished only if the plan provides for it, under Chapter 11 a lien can be extinguished so long as the property to which the lien attaches is dealt with by the plan. In this case, Universal's lien was extinguished because the property to which it seeks to attach its lien was dealt with by a confirmed Chapter 11 plan. And as previously explained, S 1141(c) releases any property dealt with by a Chapter 11 plan from all claims not expressly preserved.
 
 
 20
 This divergent treatment of liens is quite sensible-not only because S 1141(c) and S 1327(c) use different language, but also because Chapter 11 and Chapter 13 serve different purposes. First, as the bankruptcy court noted, "chapter 13 is generally a consumer bankruptcy chapter" because "relatively few chapter 13 debtors" operate a business. In re Regional Building Systems, 251 B.R. at 281. Indeed, the bankruptcy code contains debt limitations on Chapter 13 filings which necessarily limit the complexity of a Chapter 13 reorganization. See 11 U.S.C. S 109(e). Second, a Chapter 13 debtor can choose not to deal with certain secured claims. See id. SS 1325(a)(5), 1322(a). This is why under S 1327(c), unaddressed secured claims pass through a Chapter 13 reorganization unaffected even if the property subject to the claim is addressed by the plan. See Cen-Pen, 58 F.3d at 94. Third, Chapter 13 creditors do not vote on the debtor's plan. See In re Fillon, 181 F.3d 859, 862 (7th Cir. 1999) ("Creditors do not vote on a Chapter 13 plan.").
 
 
 21
 Chapter 11, by contrast, governs more complicated reorganizations and has no provision allowing a debtor to ignore secured claims. Further, Chapter 11 contemplates that every secured creditor whose rights will be impaired by the reorganization will be notified, assigned to a class, and will vote on the plan. See 11 U.S.C. SS 1123, 1125, 1126, 1129(a)(10). Indeed, in this case Universal was notified of RBS' Chapter 11 petition, participated in the reorganization, and had an opportunity to object to the plan.
 
 
 22
 In order for Chapter 11 creditors to make an informed judgment about whether to vote for the plan, they necessarily must know what property is a part of the plan, whether that property is subject to any liens, and how those liens are being treated. This is especially true when a Chapter 11 plan proposes a refinancing of the business or a transfer of assets. Unlike Chapter 13, Chapter 11 expressly contemplates that a reorganization will result in the sale or transfer of parts of the debtor's estate. Compare id. S 1322 with id. SS 1123(a)(5)(B), 1123(c). It is not surprising, therefore, that Congress sought to maximize the information available to those receiving the debtor's assets by requiring all outstanding claims to be identified by the plan or the order confirming the plan.
 
 
 23
 Indeed, it would be imprudent for any creditor to accept a debtor's property as satisfaction for his claim without knowing whether some unidentified third party is lying in wait with a lien. Similarly, refinancing could be inestimably more difficult if the lender is unsure whether property in the debtor's estate is subject to unidentified liens lurking in the background. See Matter of Penrod , 50 F.3d at 463 (explaining how S 1141(c)'s extinguishment of liens not expressly preserved "lowers the costs of transacting with the reorganized firm, thus boosting the chances that the reorganization will succeed.").
 
 
 24
 Given all of these considerations, it was perfectly sensible for Congress to adopt a rule stating that once property comes within the ambit of a confirmed Chapter 11 plan, it is free and clear of all claims not expressly preserved. And adopting a different rule for Chapter 13 cases also makes sense given the less complex estates at issue, the fact that a Chapter 13 plan need not address all secured debts, and the fact that Chapter 13 creditors do not vote on the debtor's plan.
 
 III.
 
 25
 As the bankruptcy court noted, "[t]he focus of S 1141(c) is whether the property that is subject pre-confirmation to the lien is dealt with by the plan. In contrast, the focus of S 1327(c) is whether the creditor's interest -its lien -is provided for by the plan." In re Regional Building Systems, 251 B.R. at 281. This is precisely why our holding in this case is consistent with our prior decision in Cen-Pen -the differences between S 1141(c) and S 1327(c), both in text and in purpose, compel different outcomes.
 
 
 26
 Here, Universal actively participated in RBS' Chapter 11 reorganization as a member of the creditors' committee. Moreover, it knew of the lien against RBS' property, knew that the targeted settlement funds were dealt with by the plan, and knew that neither the plan nor the order confirming the plan expressly preserved the lien. Nevertheless, Universal failed to object to confirmation of RBS' Chapter 11 reorganization plan. In short, Universal fell asleep at the switch. Having done so, it cannot escape the consequences of its inaction by reliance on S 1327(c), which differs both in text and in purpose from S 1141(c). Accordingly, the judgment of the district court is
 
 
 27
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 Subject to an exception not relevant here, Rule 7001(2) of the Federal Rules of Bankruptcy Procedure requires a debtor to initiate an adversary "proceeding to determine the validity, priority, or extent of a lien or other interest in property."