REVISED November 19, 2007

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 06-30986

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 6, 2007

Charles R. Fulbruge III
Clerk

In The Matter Of:  AHERN ENTERPRISES INC

Debtor

--------------------------------------

ELIXIR INDUSTRIES INC

Appellant

v.

CITY BANK & TRUST CO

Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this bankruptcy case, Elixir Industries, Inc. ("Elixir") appeals the district court's judgment in favor of mortgage-holder City Bank & Trust Co. ("City Bank"), which held that Elixir's judgment lien was voided during the bankruptcy proceeding.  We hold that upon confirmation of the reorganization plan, the lien was voided under 11 U.S.C. § 1141(c), and thus AFFIRM the judgment of the district court.

I.

In May 1996 Elixir properly filed and recorded a judgment lien in the mortgage records of Natchitoches Parish, Louisiana, in the amount of $40,961.53 (plus costs and interest) on property owned by the bankrupt, Ahern Enterprises, Inc. ("Ahern"). The property subject to the lien included Ahern's manufacturing facility in Campti, Louisiana. The manufacturing facility property was subject to a prior recorded mortgage held by City Bank that exceeded the value of the property.

On July 31, 1996, Ahern filed for Chapter 11 protection. On November 21, 1996, Elixir filed a proof of claim in the amount of $53,406.02 as an unsecured priority claim. Ahern, as debtor in possession, objected to the proof of claim and argued that Elixir only had a general unsecured debt because there was no unencumbered property to which the lien could attach. A hearing was held on April 7, 1998, after which the bankruptcy court entered an order sustaining Ahern's objection because Elixir's lien was junior to that of City Bank. The bankruptcy court reduced Elixir's claim to a general unsecured claim in the amount of $40,961.53, the principal amount of Elixir's judgment.

On September 26, 1997, City Bank filed a motion for Authority to Execute Dation En Paiement and to Cancel Indebtedness, which sought to cancel all judgment liens on two parcels of Ahern property that were pledged to the bank as collateral. The motion, however, did not include the manufacturing facility property. The bankruptcy court granted the motion on October 22 and issued an order requiring the Natchitoches Parish clerk to cancel all judgments affecting these two parcels. No order was issued concerning the manufacturing facility property.

Ahern's Chapter 11 plan was confirmed by the bankruptcy court on May 30, 1997.

On November 10, 1997, Ahern voluntarily converted its Chapter 11 plan into a request for relief under Chapter 7. In February 1998, City Bank and the Chapter 7 trustee filed a joint motion requesting court approval to sell the manufacturing facility property to the bank, as senior lien holder, in satisfaction of a portion of Ahern's debts. The bankruptcy court approved the sale on March 12 and credited $693,000 against City Bank's claim, leaving it with an unsecured claim of $471,366.58. The Trustee transferred the deed for the property to City Bank on March 22.

City Bank sold the manufacturing facility property to a third party on March 30. No title check was performed to discover that Elixir's judgment lien, as well as three additional liens, remained on the property. The third party later defaulted, and City Bank foreclosed on the property.

In 2005, as it contemplated selling the property again, City Bank determined that Elixir's lien (as well as the three others) had not been cancelled. On April 29, City Bank filed a complaint for declaratory relief in bankruptcy court, seeking a ruling that the liens had been voided during Ahern's bankruptcy case. Elixir counter-claimed, requesting a declaration that the lien was still valid. After cross-motions for summary judgment, the bankruptcy court found in favor of City Bank. The court concluded that its April 1998 order sustaining Ahern's objection to Elixir's proof of claim had extinguished the lien.

Elixir appealed to the district court, which affirmed, asserting multiple reasons. The court held that: 1) the bankruptcy court's April 1998 order sustaining Ahern's objection voided Elixir's lien; 2) the bankruptcy court's confirmation and the substantial consummation of Ahern's Chapter 11 plan was sufficient to void Elixir's lien; and 3) conversion to Chapter 7 did not reinstate Elixir's lien.

Elixir subsequently filed this appeal.

II.

On appeal, Elixir argues that the bankruptcy court's order sustaining Ahern's objection to its proof of claim did not void its lien on the manufacturing facility property. Although the bankruptcy court reduced Elixir's claim to a general, non-priority claim, Elixir contends that the court merely reclassified its claim for the purposes of distribution in the bankruptcy proceedings, which did not affect its judgment lien. City Bank counters that, because the court found Elixir's claim to be an allowed unsecured claim, it was not an "allowed secured claim" under 11 U.S.C. § 506(d),[1] and the lien was therefore voided.

Elixir also contests the district court's holding that its lien was voided by the confirmation of the Chapter 11 plan. Elixir contends that, because the plan had not reached the "consummation date" necessary for its provisions to take effect, the plan's lien-stripping language did not take effect, leaving its lien on the manufacturing property. City Bank argues that 11 U.S.C. § 1141(c) operated to void Elixir's lien. City Bank contends that the plan took effect on "substantial consummation" as defined by 11 U.S.C. § 1101.

## III.

### A.

In reviewing cases originating in bankruptcy, we perform the same function as the district court: the bankruptcy court's findings of fact are reviewed for clear error, and issues of law are reviewed de novo. In re Soileau, 488 F.3d 302, 305 (5th Cir. 2007).

---

[1] Section 506(d) provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--
> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

We do not address the district court's holding that Elixir's lien was voided by the bankruptcy court's April 1998 order reducing Elixir's claim and classifying it as a general unsecured creditor.[2] We conclude instead that the provisions of 11 U.S.C. § 1141(c) decide this case. In reaching this decision, we hold first that, under section 1141(c), the confirmation of a Chapter 11 plan voids liens on property dealt with by the plan unless they are specifically preserved, if the lien holder participates in the reorganization. Elixir's judgment lien was voided because Ahern's Chapter 11 plan was confirmed without Elixir's objection; because the property subject to Elixir's lien was dealt with by the plan; because Elixir participated in the reorganization proceedings; and finally because the plan did not preserve Elixir's lien.

B.

Title 11 U.S.C. § 1141(c) provides, with immaterial exceptions, that "except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor."

Other circuits who have considered § 1141(c) in the context of facts similar to those presented here have found that the section operates to extinguish liens that are not preserved in a confirmed Chapter 11 plan. The first court to state this default rule was the Seventh Circuit. In re Penrod, 50 F.3d 459 (7th Cir. 1995). In Penrod, the debtor's Chapter 11 plan made provision for payment of a creditor's claim, which was secured by a lien on the debtor's hogs. Id. at 461.

---

[2] Although we do not reach the district court's holding affirming the bankruptcy court's judgment on the basis of the bankruptcy court's April 1998 order, we note that the holding is suspect in the light of the Supreme Court's decision in Dewsnup v. Timm, 502 U.S. 410 (1992). In Dewsnup, the Court found that section 506(d) only serves to strip liens in cases where "a claim secured by the lien itself has not been allowed." Id. at 415-16. Because Elixir's claim was allowed, it is not clear that section 506(d) voided Elixir's lien.

Neither the plan nor the order confirming it provided whether the lien would be extinguished. Id. The Seventh Circuit acknowledged the "old saw" that liens pass through bankruptcy unaffected. Id. It reasoned, however, that "when lienholders participate in a bankruptcy proceeding, and especially in a reorganization, they know that their liens are likely to be affected, and indeed altered." Id. at 462. The court held that liens are "interests" covered by section 1141(c) and that "unless the plan of reorganization, or the order confirming the plan says that a lien is preserved, it is extinguished by the confirmation . . . provided, we emphasize, that the holder of the lien participated in the reorganization." Id. at 463. The court found that its interpretation of section 1141(c) would lower the transaction costs of dealing with a reorganized debtor by allowing prospective creditors or investors to determine from the plan of reorganization itself whether liens of creditors whose interests are defined in the plan survive. Id.

The Eighth Circuit acknowledged Penrod's rationale when it considered the Federal Deposit Insurance Corporation's appeal of an order confirming a Chapter 11 plan. FDIC v. Union Entities (In re Be-Mac Transport Co., Inc.), 83 F.3d 1020 (8th Cir. 1996). The court noted the rule that "a secured creditor who participates in the reorganization may also lose its lien by confirmation of a reorganization plan which does not expressly preserve the lien." Id. at 1025. The Be-Mac court found, however, that the FDIC's lien was not voided by the confirmed Chapter 11 plan because the bankruptcy court erroneously disallowed its claim, on account of the FDIC's untimely filed proof of claim. Id. at 1027. Had its claim been classified properly as a secured claim, the FDIC would have been entitled to vote and receive distributions as a secured creditor. The court held, citing Penrod, that because the FDIC was denied that right, it did not participate in the reorganization sufficiently to allow its lien to be extinguished. Id. The court stated that "[the FDIC]'s lien was never brought into the

bankruptcy proceedings and could therefore not be extinguished by confirmation of the plan." Id.

Citing Be-Mac, the Tenth Circuit acknowledged in In re Barton that a confirmed Chapter 11 plan may void a lien. 104 F.3d 1241, 1245 (10th Cir. 1997). The court there found that the plan at issue did not void a secured creditor's lien because the plan did not specifically refer to the property on which the creditor held a lien, the creditor's interest in the property, or the plan's effect on the property. Id. at 1246. The creditor did not receive sufficient notice for the Chapter 11 plan to affect its security interest. Id.

Finally, the Fourth Circuit determined in In re Regional Bldg. Systems, Inc. that section 1141(c) operates to extinguish liens not expressly preserved by a Chapter 11 plan. 254 F.3d 528, 531 (4th Cir. 2001). In Regional, a creditor held a claim secured by a security interest in certain home construction materials. Id. at 530. The claim was allowed only as an unsecured claim, however, because the property had a value of zero at the time of filing. Id. The creditor participated in the reorganization as a member of the unsecured creditors committee and filed a proof of claim asserting an unsecured, nonpriority claim. Id. Prior to plan confirmation, the debtor settled an unrelated lawsuit, resulting in the payment of about $5 million. Id. The plan that was confirmed shortly thereafter did not provide for retention of the creditor's lien, even though the settlement funds were then available to satisfy the claim. Id. Nevertheless, the Fourth Circuit affirmed the bankruptcy court's holding that the confirmed Chapter 11 plan had extinguished the lien. Id. at 533. The court found that all the elements necessary to satisfy section 1141(c) were satisfied. Id. at 530. The Chapter 11 plan was confirmed without any objection by the creditor. Id. The property to which the lien would attach, that is, the settlement funds, was dealt with by the plan. Id. Finally, neither the plan nor the order confirming the plan expressly preserved the creditor's lien. Id.

The court found that the creditor "fell asleep at the switch," by failing to object to confirmation of a Chapter 11 plan that did not preserve its lien, and the lien was therefore extinguished.   Id. at 533.

Given the sound reasoning and results of these cases, as set forth above, we have no reason not to now join the other circuits that have considered the issue and hold that 11 U.S.C. § 1141(c) provides the default rule that a confirmed Chapter 11 plan may void liens not specifically preserved.[3]  We hold that confirmation of a Chapter 11 plan voids liens not preserved by the plan, provided that the plan dealt with the property to which they attach and the lien holder participates in the reorganization.

C.

Four conditions must therefore be met for a lien to be voided under section 1141(c):  (1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien. We now apply these criteria to the lien claimed by Elixir.

First, Ahern's Chapter 11 plan was confirmed by order of the bankruptcy court on May 30, 1997.  Elixir made no objection to confirmation of the plan.

Second, the property subject to Elixir's lien was dealt with by the plan. The plan states that "City Bank and Trust Company is the senior secured creditor of the Debtor and holds a mortgage and security interest in the Debtor's land, building, inventory and fixtures. . . . City Bank and Trust Company shall

---

[3] The Southern District of Texas applied the Penrod rule in In re Burton Securities, 202 B.R. 411, 420 (S.D. Tex. 1996).  That court held that "confirmation of a chapter 11 plan of reorganization extinguishes a creditor's lien where the plan provides for payment of the creditor's claim, but makes no provision for preservation of the lien, and the creditor participated in the bankruptcy proceedings.  Consequently, since Appellant participated in the bankruptcy proceedings and the reorganization plan did not expressly preserve its lien, the Court concludes that the bankruptcy court's confirmation of Debtor's plan of reorganization extinguished [Appellant]'s lien." Id.  (citation omitted).  This court affirmed the district court's judgment in a short unpublished opinion.  In re Burton Securities, 129 F.3d 607 (5th Cir. 1997).

retain its liens and encumbrances until paid in full[.]" Elixir's judgment lien was attached to the debtor's manufacturing facility property -- its land and building. The plan mentioned the property subject to Elixir's lien and specifically provided that City Bank's encumbrances would remain on the property following confirmation.

We do note, however, that there is some ambiguity in the cases discussed above concerning exactly what must be "dealt with" by a Chapter 11 plan under section 1141(c). The Penrod court suggests that the lien that is to be voided must be dealt with. It states: "[U]nless the plan of reorganization, or the order confirming the plan, says that a lien is preserved, it is extinguished by the confirmation. This is provided, we emphasize, that the holder of the lien participated in the reorganization. If he did not, his lien, would not be 'property dealt with by the plan,' and so the section would not apply." Penrod, 50 F.3d at 463 (emphasis added). Penrod has been interpreted to require that the lien itself be dealt with in the plan. See 260 Gregory LLC v. Black Hawk/Central City Sanitation Dist., 77 P.3d 841, 845 (Colo. App. 2003) (holding that the lien at issue was not extinguished by silence in the plan as to its survival unless it is dealt with by the plan by a provision for the payment of or securing of the claim); Coffin v. Malvern Fed. Savings Bank, 189 B.R. 323, 236-27 (E.D. Penn. 1995) (holding that, because secured creditor did not attempt to collect its entire debt through the bankruptcy proceeding, "[t]he liens in question were not 'property dealt with by the plan for § 1141(c) purposes").

On the other hand, section 1141(c) has been interpreted to require that the property that is subject to the lien be dealt with in the plan. In Regional, the court stated that "the property to which [appellant] now seeks to attach its lien was 'dealt with by the plan.' Specifically, the plan stated that after certain other claims had been paid, [appellant] and the other unsecured creditors would receive a pro rata share of the remainder of the estate, including any amounts

left in the $5 million settlement fund [to which appellant seeks to attach its lien]." 254 F.3d at 531.

The latter view is the better view, and it is the one that we adopt. We note first that, according to Penrod, the condition that the lien itself be "property dealt with by the plan" can be satisfied by the lien holder's participation in the reorganization. Penrod, 50 F.3d at 463. More importantly, a requirement that the lien itself be dealt with by the plan is not a sensible reading of section 1141(c). Section 1141(c) provides that "property dealt with by the plan is free and clear of all claims and interests. . ." If the lien is the property that must be dealt with, then section 1141(c) would have to be read to say that "liens dealt with by the plan are free and clear of liens." Because liens constitute one of the interests that section 1141(c) extinguishes, it is sensible to interpret "property dealt with by the plan" as the property subject to the lien.

Third, the record indicates that Elixir participated in the reorganization proceeding. Although the requirement that a secured creditor participate in the reorganization proceeding is a judicial gloss on section 1141(c), participation ensures that the secured creditor has notice of the plan and its potential effect on the creditor's lien. See Penrod, 50 F.3d at 462; Be-Mac, 83 F.3d at 1027. Penrod required that the creditor participate by filing a proof of claim. See 50 F.3d at 462. At least one bankruptcy court has stated that the only participation necessary is that the creditor receive notice of the plan and an opportunity to object. In re Regional Building Systems, Inc., 251 B.R. 274, 287 (Bankr. D.Md. 2000).

In the instant case, it is a sufficient level of participation that Elixir filed a proof of claim as an unsecured priority creditor.[4] In addition, the plan of

---

[4] The court in Be-Mac found that confirmation of the plan did not void the FDIC's lien because the FDIC was not allowed to participate as a secured creditor. 83 F.3d at 1027. In that case, however, the FDIC was entitled to participate as a secured creditor because there was property to which its lien attached, unlike this case. See id.

reorganization provided for pro-rata payment of all unsecured and undersecured creditors of the debtor, specifically stating that this class of claims included all judgment lien holders. Although the plan did not mention Elixir by name, it gave sufficient notice of the plan's treatment of the property to which Elixir's lien attached and the status of Elixir's claim to satisfy the requirements of due process.

Finally, we come to the consideration of whether the plan of reorganization provided otherwise than that the property subject to Elixir's lien would be "free and clear." In general, a plan of reorganization "provides otherwise" by expressly stating that the lien that is asserted remains on the property to which it is attached. Regional, 254 F.3d at 531 ("[C]onfirmation of [debtor]'s Chapter 11 plan rendered the $5 million settlement fund 'free and clear of all claims' not expressly preserved."); Penrod, 50 F.3d at 463 ("[U]nless the plan of reorganization, or the order confirming the plan, says that a lien is preserved, it is extinguished by the confirmation."). Ahern's plan did not expressly preserve Elixir's lien. Instead, it stated that City Bank would retain its liens and encumbrances on Ahern's land, building, inventory and fixtures, making no mention of Elixir's lien.

Elixir contends, nevertheless, that the Chapter 11 plan "provides otherwise." The parties have argued this point at length, both parties starting from the premise that this question is resolved by an interpretation of article 8.14 of the plan of reorganization. Their argument is not, however, whether specific terms of the plan "provide otherwise," but whether the plan was in effect at the time the bankrupt Ahern abandoned the plan and converted its bankruptcy to Chapter 7. Elixir's argument assumes that, before the proceeding was converted to Chapter 7, the lien had not been voided and thus remains in effect.

Article 8.14 states, in relevant part:

> The confirmation of the Plan (subject to the occurrence of the Consummation Date) shall discharge the Debtor from any debt that arose before the Consummation date. . . .
>
> Upon consummation of the Plan, its provisions will bind, and inure to the benefit of, the Reorganized Debtor, any Entity affected by the Plan and its respective predecessors, successors, assigns, agents, officers, and directors. Except as otherwise specifically provided by the Plan, the distributions and rights that are provided in the Plan will be in complete satisfaction, discharge and release of (I) all Claims and Causes of Action against, liabilities of, liens on, obligations of and Interest in the Debtor or the direct or indirect assets and properties of the Debtor whether known or unknown[.]

The main point of controversy between Elixir and City Bank regarding article 8.14 is the interpretation of the phrase "Upon consummation." Elixir contends that "consummation" refers to the "Consummation Date," a term defined by the plan, which both parties concede did not occur before conversion to Chapter 7. Elixir contends that the occurrence of the Consummation Date was a suspensive condition, the occurrence of which was necessary for the remainder of the plan to take effect. City Bank argues instead that "consummation" in article 8.14 should be interpreted as "substantial consummation" as defined by 11 U.S.C. § 1101(2), which it contends occurred sometime between confirmation and conversion to Chapter 7.[5]

---

[5] 11 U.S.C. § 1101(2) provides:
"substantial consummation" means--
(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) commencement of distribution under the plan.

Upon review of the plan in its entirety, it is difficult to give a consistent meaning to the term "consummation" as it is used in various places throughout the plan. That is no matter, however, because we conclude that regardless of how the term "consummation" is interpreted in article 8.14, Elixir's lien was voided upon confirmation of the plan.

The Eleventh Circuit reached a similar conclusion in considering the application of 11 U.S.C. §1141(d) in United States v. White, 466 F.3d 1241 (11th Cir. 2006). Section 1141(d) provides: "(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan- (A) discharges the debtor from any debt that arose before the date of such confirmation. . . ." The court found in White that the debtor was granted a discharge upon confirmation, notwithstanding that the plan provided a post-confirmation effective date. Id. at 1246. The court noted that a post-confirmation effective date does not satisfy the "otherwise provided" condition of section 1141(d). Id. The court reasoned that a holding that discharge occurs on some effective date of a plan, instead of upon confirmation of the plan, would be contrary to Congressional intent: "If the plan could delay the grant of discharge merely by having a post-confirmation effective date, then Congress' statement that 'the confirmation of a plan. . .discharges the debtor from any debt. . .' would be in error. . . . [T]he triggering event for discharge would not actually be the plan's confirmation but the plan's taking effect. . . . [W]e should assume that had Congress intended to condition discharges on a plan's taking effect, it would have done so explicitly." Id.

The language of section 1141(c) similarly provides that the property dealt with by the plan will is free and clear after confirmation. Even if Elixir's interpretation of the plan is correct, and the plan did not take effect until the

Consummation Date, its lien was void after confirmation of the plan, by operation of § 1141(c), unless the plan specifically provides otherwise.[6]

In sum, Elixir chose to participate in the reorganization in hopes of receiving a payout as an unsecured creditor, because there was no equity to which its lien could attach. Elixir could have objected and asserted its position that the lien was preserved by appealing the order confirming the plan of reorganization. See Penrod, 50 F. 3d at 464. Having participated without objection in a reorganization in which the confirmed plan dealt with the land and building subject to its lien, Elixir cannot now claim that the lien survived.[7]

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[6] It is difficult to conclude that Elixir's interpretation is correct, in any event, because the plan requires the sale of certain property and the commencement of certain payments immediately on confirmation.

[7] We note that our analysis has been confined to the effect of a confirmed Chapter 11 plan under 11 U.S.C. § 1141(c). As the Fourth Circuit noted in Regional, there are important differences in Chapter 11 proceedings and Chapter 13 proceedings that may warrant different treatment of liens. 254 F.3d 528, 532-33 ("[It was perfectly sensible for Congress to adopt a rule stating that once property comes within the ambit of a confirmed Chapter 11 plan, it is free and clear of all claims not expressly preserved. And adopting a different rule for Chapter 13 cases also makes sense given the less complex estates at issue, the fact that a Chapter 13 plan need not address all secured debts, and the fact that Chapter 13 creditors do not vote on the debtor's plan.").