14-3381-bk
City of Concord, N.H. v. Northern New England Telephone Operations LLC

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: June 16, 2015      Decided: August 4, 2015)

Docket No. 14-3381-bk

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re: NORTHERN NEW ENGLAND TELEPHONE OPERATIONS LLC,

Debtor,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CITY OF CONCORD, N.H.,

Appellant,

- v.-

NORTHERN NEW ENGLAND TELEPHONE OPERATIONS LLC,

Debtor-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before:              NEWMAN, JACOBS, and RAGGI, Circuit Judges.

This appeal is brought by a secured creditor that contends its lien passed through a Chapter 11 reorganization unaffected, even though the reorganization plan purported to extinguish all liens as to all of the debtor's property. The lien of the City of Concord, New Hampshire, secured outstanding property taxes owed by the debtor, Northern New England Telephone Operations LLC ("NNETO"). The City filed proofs of claim with respect to property tax bills issued pre-petition; at issue are tax bills issued immediately post-petition, which were secured by the same lien as secured the pre-petition bills. The United States Bankruptcy Court for the Southern District of New York (Morris, C.J.) determined that the plan had extinguished the City's tax lien pursuant to 11 U.S.C. § 1141(c), and denied the City's Motion for Allowance and Payment of Tax Claims. The United States District Court for the Southern District of New York (Sweet, J.) affirmed.

We have not previously decided the circumstances under which a plan of reorganization extinguishes a lien. We hold that a lien is extinguished by a reorganization plan if: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" by the terms of the plan; and (4) the lienholder participated in the bankruptcy proceedings.

2

As they apply to the facts of this case, all four requirements are satisfied. We conclude that the plan extinguished the City's lien, and we therefore AFFIRM.

> JAMES W. KENNEDY, City Solicitor, Concord, New Hampshire, for Appellant.
>
> JAMES T. GROGAN, Paul Hastings LLP, Houston, Texas, for Debtor-Appellee.

DENNIS JACOBS, Circuit Judge:

The City of Concord filed timely proofs of claim for property taxes owed by a Chapter 11 debtor with respect to quarters of the 2009 tax year that had been billed pre-petition, but did not file proofs of claim with respect to property tax bills for later quarters that were billed during the bankruptcy proceedings. A single lien secured payment of the entire tax burden--both taxes that were the subject of claims and those that were not. Upon the City's Motion for Allowance and Payment of Tax Claims that were not filed, the United States Bankruptcy Court for the Southern District of New York (Morris, C.J.) ruled that the now-confirmed plan extinguished the lien, reasoning that the plan declared "all property" of Northern New England Telephone Operations LLC ("NNETO") to

3

be free and clear of liens, including the City's lien, because the City had asserted

the tax liabilities for the earlier quarters but not for the later quarters.

Before the enactment of the U.S. Bankruptcy Code, 11 U.S.C. § 101 et seq.,

the rule governing extinguishment of liens was simple: "liens pass through

bankruptcy unaffected." Dewsnup v. Timm, 502 U.S. 410, 417 (1992); see Long v.

Bullard, 117 U.S. 617 (1886). The Code preserves that background rule, see 11

U.S.C. § 506(d), with a caveat: liens are extinguished if the underlying property

was "dealt with" by a confirmed plan, unless the plan or the order of

confirmation provides otherwise. Id. § 1141(c).

Applying § 1141(c), the bankruptcy court held that the reorganization plan

of debtor NNETO extinguished a tax lien held by the City of Concord. The

bankruptcy court therefore denied the City's Motion for Allowance and Payment

of Tax Claims, filed more than two years after confirmation. The United States

District Court for the Southern District of New York (Sweet, J.) affirmed. On

appeal, the City argues in the alternative as to why its lien survived the

bankruptcy proceedings, including: (1) that a plan extinguishes a lien under

§ 1141(c) only if the plan's text "dealt with" the property subject to the lien, and

that the text of NNETO's plan did not deal with the relevant property; (2) that a

4

plan extinguishes a lien under § 1141(c) only if the lienholder participated in the bankruptcy proceedings, and that the City's participation was insufficient to support extinguishment; (3) that § 506(d)(2) preserves the lien because the plan was confirmed without any proof of claim having been filed for those tax bills the City now asserts; (4) that, even if § 1141(c) applies and the City's lien was extinguished by the plan, equitable principles should prompt this Court to recognize the City's lien; and (5) that the doctrine of excusable neglect required the bankruptcy court to accept the City's untimely assertion of the lien. Each of these arguments fails.

We have not previously considered the circumstances under which a reorganization plan extinguishes a lien. We now hold that a lien is extinguished by a Chapter 11 plan if: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" by the terms of the plan; and (4) the lienholder participated in the bankruptcy proceedings. As they apply to the facts of this case, all four requirements are satisfied. We conclude that the plan extinguished the City's lien, and we therefore affirm.

## BACKGROUND

On October 26, 2009, NNETO, along with its parent corporation FairPoint Communications, Inc., filed petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the Southern District of New York. On January 13, 2011, the bankruptcy court confirmed the operative reorganization plan (i.e., the Third Amended Joint Plan of Reorganization Under Chapter 11).

As of the petition date, NNETO owned several parcels of real property in Concord, New Hampshire. The City of Concord would bill NNETO for property taxes on a quarterly basis. The tax year begins each April 1, with quarterly tax bills issuing in July for Q1, October for Q2, January for Q3, and March for Q4. When NNETO filed its bankruptcy petition in October 2009, the City had already issued property tax bills for the first and second quarters of the 2009 tax year. The City filed several proofs of claim in NNETO's bankruptcy proceedings, including the Q1 and Q2 property tax bills for 2009. However, the City never filed proofs of claim for Q3 and Q4. Payment on those bills was due January 2, 2010, and March 31, 2010, and the City mailed both bills to NNETO on November 20, 2009. (All dates pertinent to the tax bills preceded the April 26, 2010 bar date--the deadline for governmental units to file proofs of claim against NNETO.)

Ultimately, the bankruptcy court allowed the City's claims for the Q1 and Q2 tax bills (after reducing some of the amounts). As to the Q3 and Q4 tax bills, the City moved the bankruptcy court on October 11, 2013 (i.e., after the January 13, 2011 confirmation) to formally allow those tax bills and order payment. The motion contended, inter alia, "that [] the Tax Claim is secured by a lien and that such lien was not discharged by the Plan." (J.A. 367.) NNETO opposed the motion on the ground that the lien was extinguished on confirmation of the plan.

The bankruptcy court denied the City's motion, citing the plan provision that "all property" of NNETO be free and clear of creditors' interests, which the court interpreted to mean that the tax lien on NNETO's real property in Concord was extinguished. The district court affirmed. The City challenges that affirmance on further appeal to this Court.

**DISCUSSION**

When a bankruptcy appeal reaches us after district court review of the bankruptcy court order, our review of the bankruptcy court order is "plenary." Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994). In undertaking this plenary review, "we

7

independently review the factual determinations and legal conclusions of the bankruptcy court," evaluating the bankruptcy court's legal conclusions <u>de novo</u> and its factual findings for clear error. <u>Id.</u> (internal quotation marks omitted).

**I**

The longstanding background rule has been that "liens pass through bankruptcy unaffected." <u>Dewsnup v. Timm</u>, 502 U.S. 410, 417 (1992); <u>In re Penrod</u>, 50 F.3d 459, 461 (7th Cir. 1995). For the most part, the federal Bankruptcy Code, 11 U.S.C. § 101 <u>et seq.</u>, (originally enacted as the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549), leaves that general principle intact. <u>Dewsnup</u>, 502 U.S. at 417; <u>see</u> 11 U.S.C. § 506(d). However, Chapter 11 of the Code contains a caveat:

> Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c). (The parties agree that the statutory exceptions, § 1141(d)(2) and § 1141(d)(3), have no application to this case.)

8

The phrase, "interests of creditors," in § 1141(c) includes liens.  Cf. id. § 101(37) (defining "lien" as "interest in property to secure payment of a debt or performance of an obligation").  Although "§ 1141(c) does not explicitly reference the extinguishment of liens, . . . courts have uniformly held that confirmation of a reorganization can act to extinguish liens."  In re Chrysler LLC, 576 F.3d 108, 126 (2d Cir.) (citing cases), vacated as moot sub nom. Ind. State Police Pension Tr. v. Chrysler LLC, 558 U.S. 1087 (2009).

Accordingly, whether a plan extinguishes a lien depends on the requirements embedded in § 1141(c).  The express wording of § 1141(c) provides that a lien is extinguished if (1) the plan is confirmed, (2) the property subject to

9

the lien is "dealt with" by the plan,[1] and (3) neither the plan nor the order of confirmation preserves it.

Our sister circuits and the lower courts of this Circuit have inferred a fourth consideration: that a reorganization plan extinguishes a lien only if the lienholder participated in the bankruptcy proceedings. The participation requirement was recognized as such in Penrod. See 50 F.3d at 462-63. The plan in that case provided for payment of a claim secured by a lien on several hogs, but was silent as to whether the lien was extinguished. Id. at 461. After the plan effective date but before the debtors were required to make payment, the debtors sold the hogs for slaughter and kept the proceeds. Id. The creditor believed it had maintained a lien on the hogs and therefore was owed the sale proceeds; but

---

[1] Some courts have interpreted § 1141(c) to hinge on whether the plan "dealt with" the *lien itself*, rather than with the *property subject to the lien*. See, e.g., Penrod, 50 F.3d at 463. More recent cases differ. See In re WorldCom, Inc., 382 B.R. 610, 622 (Bankr. S.D.N.Y. 2008), aff'd sub nom. WorldCom Inc. v. Waldinger Corp. (In re WorldCom, Inc.), No. 09 Civ. 9623, 2011 WL 1496378 (S.D.N.Y. Apr. 19, 2011), aff'd 466 F. App'x 28 (2d Cir. 2012) (summary order); see also Elixir Indus., Inc. v. City Bank & Tr. Co. (In re Ahern Enters., Inc.), 507 F.3d 817, 823 (5th Cir. 2007); Universal Suppliers, Inc. v. Reg'l Bldg. Sys., Inc. (In re Reg'l Bldg. Sys., Inc.), 254 F.3d 528, 531 (4th Cir. 2001). The property subject to the lien, rather than the lien itself, must be dealt with by the plan. After all, "[i]f the lien is the property that must be dealt with, then [§] 1141(c) would have to be read to say that 'liens dealt with by the plan are free and clear of liens.'" Ahern, 507 F.3d at 823.

the court held that the lien was extinguished by the plan.  As the court explained, since lienholders "know that their liens are likely to be affected, and indeed altered," their participation in a reorganization qualifies the background rule that liens pass through bankruptcy unaffected.  See id. at 462.  Accordingly, the court held that a lien can be extinguished pursuant to § 1141(c) if the lienholder participated; and that if the lienholder did not participate, then "his lien would not be 'property dealt with by the plan,' and so the section would not apply."  Id. at 463 (quoting 11 U.S.C. § 1141(c)).

Similarly, the secured creditor in FDIC v. Union Entities (In re Be-Mac Transp. Co.), 83 F.3d 1020 (8th Cir. 1996), filed a proof of claim that inadvertently characterized part of the claim as unsecured.  See id. at 1022.  The creditor thereby lost the ability to vote and receive distributions.  Id. at 1027.  The Eighth Circuit held that, in view of § 1141(c)'s "dealt with" language, the creditor's participation in the reorganization was insufficient to effect extinguishment.  Id.

Other circuits followed suit, citing Penrod and Be-Mac.  See Elixir Indus., Inc. v. City Bank & Tr. Co. (In re Ahern Enters., Inc.), 507 F.3d 817, 821-22 (5th Cir. 2007); Universal Suppliers, Inc. v. Reg'l Bldg. Sys., Inc. (In re Reg'l Bldg. Sys., Inc.), 254 F.3d 528, 530-33 (4th Cir. 2001); see also Am. Bank & Tr. Co. v. Jardine

11

Ins. Serv. Tex., Inc. (In re Barton Indus., Inc.), 104 F.3d 1241, 1245 & n.1 (10th Cir. 1997) (adding justification that non-participating creditor's right to due process forbade extinguishment of lien without adequate notice). Whereas Penrod and Be-Mac conceived of this participation requirement as an element of § 1141(c)'s condition that the plan "dealt with" the property underlying the lien, more recent cases have (presumably for analytical convenience) treated participation as a freestanding requirement, distinct from the inquiry whether a plan "dealt with" the property. See, e.g., Ahern, 507 F.3d at 822; In re WorldCom, Inc., 382 B.R. 610, 622 (Bankr. S.D.N.Y. 2008), aff'd sub nom. WorldCom Inc. v. Waldinger Corp. (In re WorldCom, Inc.), No. 09 Civ. 9623, 2011 WL 1496378 (S.D.N.Y. Apr. 19, 2011), aff'd 466 F. App'x 28 (2d Cir. 2012) (summary order).

We conclude that a requirement of lienholder participation is located squarely within § 1141(c). The text of the Code allows a plan to extinguish a lien only if the underlying property is "dealt with," and that condition cannot be fairly satisfied in the absence of the interested parties, including the security holder.[2]

_____

[2] In concluding that the literal conditions of § 1141(c) cannot be fairly satisfied without the lienholder's participation--and, accordingly, that lienholder participation is a stand-alone requirement for extinguishment of a lien--we rely

This conclusion is reinforced by the interaction between the section of the Code that permits the extinguishment of certain liens, § 1141(c), and the section of the Code that preserves certain liens, § 506(d). See Wright v. SEC, 112 F.2d 89, 95 (2d Cir. 1940) ("Under the most elementary principles of statutory construction [a section of the U.S. Code] must be so interpreted, if possible, as to be consistent with other provisions of the statute.") The Code preserves liens as follows:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless . . . (2) such claim is not an allowed secured claim due

---

on the equitable character of bankruptcy law. "Bankruptcy courts," after all, "are courts of equity and 'apply the principles and rules of equity jurisprudence.'" Young v. United States, 535 U.S. 43, 50 (2002) (quoting Pepper v. Litton, 308 U.S. 295, 304 (1939)) (alteration omitted).

The participation requirement serves equitable principles in two symbiotic ways. First, it ensures that interested parties are notified that property subject to a lien may be dealt with by the reorganization plan. See Ahern, 507 F.3d at 823 ("[P]articipation ensures that the secured creditor has notice of the plan and its potential effect on the creditor's lien"). Second, because the participation requirement "requires more than mere passive receipt of effective notice," Acceptance Loan Co. v. S. White Transp., Inc. (In re S. White Transp., Inc.), 725 F.3d 494, 498 (5th Cir. 2013), the participation requirement implements the background rule (that liens pass through bankruptcy unaffected) by allowing each lienholder to decide whether to "bypass his debtor's bankruptcy proceeding and enforce his lien in the usual way" or (alternatively) to "collect his debt in the bankruptcy proceeding," Penrod, 50 F.3d at 461.

only to the failure of any entity to file a proof of claim under section 501 of this title.

11 U.S.C. § 506(d). Section 506(d)(2) thus preserves liens of *non-participating lienholders* whose liens would otherwise be extinguished *solely as a result of their non-participation*. If extinguishment under § 1141(c) is consistent with this provision (as we must and do assume), then § 1141(c) must apply only to liens located outside of § 506(d)(2)'s safe harbor. Reading the "dealt with" limitation in § 1141(c) to include only *participating lienholders* harmonizes these provisions. See 8 Collier on Bankruptcy ¶ 1141.04[1], at 1141-15 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

We therefore hold that a reorganization plan has extinguished a lien pursuant to § 1141(c) only if four conditions are satisfied: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" under the terms of the plan; and (4) the lienholder has participated in the bankruptcy proceedings.

## II

As to whether the City of Concord's lien survived or was extinguished by NNETO's reorganization plan, the parties agree that the first two conditions are satisfied: NNETO's reorganization plan contains no language preserving the City's lien, and the bankruptcy court confirmed the plan. On appeal, the City argues that the text of the plan did not sufficiently deal with the property subject to the lien, and that the City as lienholder did not sufficiently participate in NNETO's bankruptcy proceedings. We conclude that both disputed conditions are satisfied and that, accordingly, the plan extinguished the City's lien pursuant to § 1141(c).

## A

The City contends that the relevant property was not "dealt with" by the terms of the reorganization plan. The bankruptcy court and the district court both concluded that the following plan language dealt with the property:

> As of the Effective Date, all property of FairPoint and Reorganized FairPoint shall be free and clear of all Claims, Liens and interests, except as specifically provided in the Plan, the Confirmation Order, or the New Credit Agreement.

(Plan ¶ 8.9.)

A plain reading of this provision settles the issue. It establishes that "all property" of the debtor is unencumbered by liens unless another provision specifies to the contrary. "All property" categorically includes each individual parcel and lot of the debtor's property, and therefore includes the six parcels of real property subject to the City's putative lien. Accordingly, the property subject to the City's lien is dealt with by this provision, and no other provision specifies to the contrary.[3] Cf. WorldCom, 382 B.R. at 622 ("Article 10.01 of the Plan stated that 'all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens . . . .' That section encompasses the Data Center, the property subject to the Lien." (omission in original)).

---

[3] The City contends that other provisions of the plan implicitly preserve the lien. The premise of the argument is that, if any provision of the plan were to extinguish the City's lien, it would be either the paragraph titled "Discharge of Claims and Termination of Old FairPoint Equity Interests" (Plan ¶ 13.2) or the paragraph titled "Discharge of Debtors" (Plan ¶ 13.3). Those provisions, the City argues, discharge various claims and liabilities without mention of the City's lien. This argument has two flaws. First, these plan provisions do not address liens at all, while ¶ 8.9 does so explicitly; so the other sections do not preserve the lien with enough specificity to overcome ¶ 8.9. Second, the omission of the specific property or lien at issue does no interpretive work given that no other property, or claim, liability, or lien is specifically mentioned.

Responding to the plan provision that "all property" be free and clear of liens, the City argues that these words are insufficiently specific to support the conclusion that the plan dealt with the specific parcels subject to the lien. The City contends that the debtor, which drafted the plan, should not benefit from omission of specific properties by including a broad catch-all clause extinguishing liens. Another circuit has expressed unwillingness to let the "debtor as draftsman of the plan" benefit from vague terms in the plan. Fawcett v. United States (In re Fawcett), 758 F.2d 588, 591 (11th Cir. 1985). However, there is an equal and opposite principle: "creditors have a responsibility to take an active role in protecting their claims." Barton Indus., 104 F.3d at 1246. And that latter principle allows a plan to deal in broad strokes with property subject to liens. Moreover, administrative considerations weigh heavily against the idea that a reorganization plan must list each specific property in order to have "dealt with" it. The categorical phrasing has the not-incidental advantage of alerting all participants in the proceedings to the risk that interests left unprotected may be swept away.

**B**

It is conceded that the City pressed claims in the NNETO bankruptcy proceedings, but the City argues that its participation was not of a kind that would allow its lien to be extinguished by the plan. Although the City filed no proof of claim for the Q3 and Q4 tax bills now putatively secured by the lien, it did file several proofs of claim, including some that were closely related to the tax bills and lien at issue in this appeal. The City contends that it did not participate *with respect to* the Q3 and Q4 tax bills, or *with respect to* the lien that arguably secured their payment. But the City's participation, even if limited, assures us that the procedural safeguards embedded in the "dealt with" language of § 1141(c) are satisfied.

The City participated in the NNETO bankruptcy most directly by submitting several proofs of claim in the reorganization proceeding. Six of them relate to the same six real properties as are at issue here: the proofs of claim concerned the Q1 and Q2 property tax bills for the 2009 tax year, while the lien at issue today would secure payment of the Q3 and Q4 property tax bills for the same tax year and the same properties.

18

We are assisted by the New Hampshire statutes that establish the contours of the contested lien. See Butner v. United States, 440 U.S. 48, 55 (1979) (explaining that "[p]roperty interests are created and defined by state law," and that this rule "appl[ies] with equal force to security interests"). New Hampshire law sets April 1 as the start of the tax year, N.H. Rev. Stat. § 76:2, and allows municipalities the option to issue property tax bills on a quarterly basis, id. § 76:15-aa. Although the City elects to issue quarterly tax bills under that provision, it is undisputed that a single, automatic statutory lien arises on April 1 of each year to secure payment of the entire tax burden for the tax year. See id. § 80:19. That statutory lien is automatically extinguished eighteen months later, on October 1 of the following year, unless the municipality-lienholder takes steps set forth in the statute to notice and perfect a full tax lien. See id. § 80:59-:86. Accordingly: the City elected to bill NNETO for its 2009 taxes in quarterly bills; the City gained an automatic statutory lien on NNETO's real property to secure the full year's tax burden, on April 1, 2009; the automatic statutory lien was set to expire on October 1, 2010; and to avoid automatic expiration, the City was required to give notice and take steps to perfect it. The City gave notice and

perfected the lien on May 14, 2010, converting the inchoate, statutory lien into a full tax lien.[4]

When the City filed proofs of claim for the Q1 and Q2 property tax bills with respect to the same six parcels of real property at issue on this appeal, it participated as to the property subject to the lien. Moreover, payment of the Q1 and Q2 tax bills was secured by the same lien at issue on this appeal. True, the lien was converted from inchoate security into a full tax lien only after the City filed its proofs of claim; nonetheless, an inference of sufficient participation follows the fact that a single lien secured payment of tax bills as to which the City participated and tax bills as to which the City stayed silent.

---

[4] The City's brief asserts that the notice and perfection steps gave rise to an entirely new lien, distinct from the inchoate statutory lien that preceded it. This conclusory assertion rests on an unnatural reading of the statute, which provides the means by which to "convert[] the automatic lien into an equitable property interest." First N.H. Bank v. Town of Windham, 639 A.2d 1089, 1091 (N.H. 1994); see also Gaff v. Town of Pembroke (In re Doolan), 447 B.R. 51, 61 (Bankr. D.N.H. 2011) (describing the perfection process as "executing a tax lien in order to maintain the perfection *of the original lien*" (emphasis added)). Under New Hampshire law, the City did not gain a new and distinct lien upon perfection, but merely converted its automatic lien.

We conclude that the City participated in NNETO's bankruptcy as to the

property subject to the lien.[5]

**III**

We reject the City's other alternative challenges to the lower courts'

decisions.

Contrary to the City's argument, the lien cannot be saved by 11 U.S.C.

§ 506(d)(2).  That provision does no independent work in this analysis, because

§ 1141(c) is a complement to § 506(d)(2), and satisfaction of the conditions for

application of § 1141(c) establishes that § 506(d)(2) does not apply.

The City argues that, even if § 1141(c) applies, extinguishment of its lien is

so inequitable a result that the lien should survive nonetheless.  We have not

previously decided whether equitable principles may rescue a lien that would

---

[5] Because the City's participation was so closely related to the property and lien at issue on this appeal, we need not decide whether some quantum of lienholder participation may be too limited or too unrelated to satisfy the procedural element of § 1141(c)'s "dealt with" requirement.  Compare Be-Mac, 83 F.3d at 1025 (holding a participation requirement unsatisfied, because secured creditor filed a proof of claim but omitted the secured portion of its claim), with Ahern, 507 F.3d at 823 (holding a participation requirement satisfied, seemingly because creditor filed any proof of claim); WorldCom, 382 B.R. at 622 (same).

otherwise be extinguished by a plan. We need not decide that question on this appeal, because the equities in this case would not support an exception. The equities favor neither side.

We also reject the City's argument that the doctrine of excusable neglect should save its lien. Applying the deferential abuse-of-discretion standard, <u>see</u> <u>Midland Cogeneration Venture Ltd. v. Enron Corp. (In re Enron Corp.)</u>, 419 F.3d 115, 124 (2d Cir. 2005), we affirm the bankruptcy court's refusal to allow the City to file the necessary proofs of claim more than two years after confirmation of the plan.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.