# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

────────

No. 14-10768

────────

In the Matter of:  R. L. ADKINS CORPORATION,

Debtor

------------------------------

BAKER HUGHES OILFIELD OPERATIONS, INCORPORATED,

Appellant

v.

HARVEY L. MORTON, Liquidating Trustee,

Appellee

─────────────

Appeal from the United States District Court
for the Northern District of Texas

─────────────

Before REAVLEY, JONES, and ELROD, Circuit Judges.

REAVLEY, Circuit Judge:

Baker Hughes Oilfield Operations, Inc. (Baker Hughes) an undersecured creditor in this bankruptcy proceeding appeals the refusal to allow it to promote its unsecured claim to secured status claim under Bankruptcy Code § 1111(b)(2).  Both the bankruptcy court and the district court have rejected that claim and we affirm.

United States Court of Appeals
Fifth Circuit

**FILED**

April 23, 2015

Lyle W. Cayce
Clerk

No. 14-10768

Background

Baker Hughes and other creditors filed a petition for involuntary Chapter 7 bankruptcy against R. L. Adkins, Corp. in July 2011 and the case was converted into a Chapter 11 proceeding in August. Scott Oils, Inc. proposed to purchase the mineral properties of the debtor and filed its Second Amended Plan of Organization on December 27, 2012. The Plan proposed the sale of substantial mineral interests, some 90 mineral leases and several wells, to Scott Oils "pursuant to Bankruptcy Code Section 363," in exchange for over 3.4 million dollars.

The Plan recognized that Baker Hughes had a lien on four of these mineral leases and one well (Teeter #1H). The full claim of Baker Hughes in the Teeter well is shown to be $321,506.28 but only a secured $38,753.22 interest. Four other creditors are shown to have secured interests in the Teeter well. On March 4, 2013 Baker Hughes filed for an election pursuant to § 1111(b)[1] to have its claim treated as secured to the full extent. Scott Oils replied by pointing to the terms of the statute that denies the election where "such property is sold under § 363 of this title or is to be sold under the Plan." § 1111(b)(1)(B)(ii).

Several days of hearing on confirmation of the Plan were held in April of 2013 and the Plan was confirmed on May 10, 2013. Baker Hughes did not appear at the hearing on confirmation and has not objected or appealed any act or decision of the bankruptcy court prior to the confirmation. Nor was the confirmation appealed. Following the confirmation, Baker Hughes has pursued its Section 1111 claim and argued that either it had the right to make a credit bid at the sale of the collateral or be granted election sought under § 1111(b).

---

[1] The text of Sec. 1111 is in the Appendix.

2

No. 14-10768

Analysis

The Supreme Court has ruled that debtors may not sell their property free of liens without allowing a lienholder to credit bid. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012). Baker Hughes contends that it has been denied that right.

The Plan at section 6.1 provides that "the Trustee shall sell to Scott Oils all leasehold interests listed on Exhibit A … free and clear of all liens, claims and encumbrances and pursuant to Bankruptcy Code § 363." Section 363(k) grants the credit bid right to the creditor and reads:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

The Plan appears to provide that the sale pursuant to § 363 gives the secured creditors the right to credit bid. However, Baker Hughes reads 6.1 of the Plan to address only the bulk sale itself and has the effect of denying the right to credit bid in the sale of the collateral of Baker Hughes. To support this reading of the law, Baker Hughes says it is the responsibility of the Trustee to make arrangements for the sale if the right is recognized. There were fifteen secured creditors here. The Trustee should be given notice from a creditor who wants to have a credit bid of collateral. Baker Hughes has never sought a credit bid, and there is no bidding without belief that the value of the collateral is higher than that of the lien.

Any uncertainty Baker Hughes had about the meaning of the Plan, and whether it had been denied the right to credit bid, could have been easily resolved at the hearing on confirmation or by objection or even appeal. Actually, it was resolved by the confirmation order which provided: "the Plan

3

No. 14-10768

provides for the sale, subject to § 363(k) of the Bankruptcy Code, of property that is subject to the lien securing such claims." This was a binding final judgment not appealed. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987).

Because Baker Hughes had the right to credit bid a sale of its secured interest and failed to exercise it and because Section 1111 denies its election, the bankruptcy and district courts correctly rejected the claim.

The Judgment is AFFIRMED.

No. 14-10768


APPENDIX

11 U.S.C. § 1111

§ 1111  Claims and interests

(a)  A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

(b)(1)(A)  A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless--
    (i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or
    (ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

(B)  A class of claims may not elect application of paragraph (2) of this subsection if--
    (i) the interest on account of such claims of the holders of such claims in such property is of inconsequential value; or
    (ii) the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under section 363 of this title or is to be sold under the plan.

(2)  If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

5

No. 14-10768

JONES, Circuit Judge, specially concurring:

I concur in the judgment only because Baker Hughes's practical position seems at odds with its claim to having been "denied" a right to credit bid. Given the nature of Baker Hughes's liens, exercising a credit bid on one or any of the wells would not have been feasible. After all, the appellant's claim arises from materialmen's liens for services on four of the debtor's leases and one well. Baker Hughes was in a situation like that of a third lien creditor on real property, who might theoretically credit bid at a foreclosure sale but is highly unlikely to do so because he would have to pay off the senior liens before he could take possession. In these circumstances, I believe Baker Hughes is trying to take advantage of the bankruptcy court's error in failing to rule on the § 1111(b) election before it confirmed the Chapter 11 Plan. The argument that Baker Hughes waived its § 1111(b) election by failing to pursue it at the confirmation hearing is persuasive.

The majority unwisely steps beyond this narrow holding, however, when they appear to conclude that the bulk sale of the debtor's assets, which occurred outside a public auction and included multiple assets burdened by multiple liens, nevertheless protected a secured creditor's right to credit bid. The majority so holds only because the reorganization plan and confirmation order both perfunctorily incant § 363 of the Bankruptcy Code,[1] and the Supreme Court holds that a secured creditor has a statutory right to credit bid against a proposed sale of its collateral in order to confirm a "cramdown" plan. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, __ U.S. __, 132 S. Ct.

---

[1] 11 U.S.C. § 363(b) authorizes a debtor in possession or trustee to sell property of the estate "other than in the ordinary course of business." If however, the property is subject to a lien securing an allowed claim, "unless the court for cause orders otherwise the holder of such claim may bid at such sale, and . . . may offset such claim against the purchase price of such property." *Id.* § 363(k). Together, these provisions enable a secured creditor to credit bid as it might at a foreclosure sale.

6

No. 14-10768

2065, 2073 (2012) ("Because the RadLAX debtors may not obtain confirmation of a Chapter 11 cramdown plan that provides for the sale of collateral free and clear of the Bank's lien, but does not permit the Bank to credit-bid at the sale, we affirm the judgment of the Court of Appeals.").  In my view, the majority's holding, if extended beyond the facts before us, begs a very serious question about the implementation of credit bidding and therefore the protection of the secured creditor's rights.

The Bankruptcy Code allows alteration of the property rights of secured creditors evidenced in liens against a debtor's property, but only against the backdrop that if a secured creditor chooses, it may decline to participate in the case and its lien will then "ride through" bankruptcy unaffected.  *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S. Ct. 773, 778 (1992); *Long v. Bullard,* 117 U.S. 617, 620-21, 6 S. Ct. 917, 918 (1886); *see also In re Ahern Enter., Inc.*, 507 F.3d 817, 820-22 (5th Cir. 2007) (discussing cases).  Generally, a secured creditor finds it necessary to participate by filing a proof of claim and then negotiating with the debtor or attempting to foreclose its lien.  Material to the case at hand, the secured creditor's rights are protected against elimination of its property rights by § 363, which governs property sales outside the ordinary course of business, and by the statutory criteria for confirming a reorganization plan over the creditor's objection ("cramdown").  *See* 11 U.S.C. § 1129(b)(2)(A).  As noted above, both of these provisions authorize sales "free and clear" of the liens only if the secured creditor has a chance to credit bid at the foreclosure or sale, to take back the collateral, and thus to preserve the benefit of its bargain.

The secured creditor's rights are further enhanced by § 1111(b), a provision that allows the creditor under certain circumstances to have its claim for the entire debt placed on the collateral.  Normally, the secured creditor would have a claim against the debtor bifurcated into (a) a secured claim to the extent of the value of the collateral and (b) an unsecured deficiency claim.

11 U.S.C. § 506(a)(1). The § 1111(b)(2) election waives any unsecured deficiency claim but ensures essentially that the debtor must resolve the secured claim for the maximum value from the collateral.[2] This provision was enacted because Congress recognized that under the former Bankruptcy Act, a non-recourse creditor could be placed at the mercy of (notoriously variable) judicial valuations of secured real property, both losing its right to foreclose and suffering an unfair diminution in its claim. *See In re Matrix Dev. Corp.*, No. 08-32798, 2009 WL 2169717, at \*2-3 (Bankr. D. Ore. 2009); 7 ALAN N. RESNICK AND HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 111.03[1][a] (16th ed. 2015).

But Congress wrote § 1111(b) to empower both non-recourse and recourse creditors if the provision otherwise allows them to utilize the election. By its terms, however, the 1111(b) election is unavailable to recourse creditors where the liened "property is sold under section 363 of this title or is to be sold under the plan." 11 U.S.C. § 1111(b)(1)(B)(ii). This is because, as has been explained above, secured creditors are assured of being able to credit bid for their collateral and retain the benefit of their bargain under either of those provisions. *See In re Waterways Barge P'ship*, 104 B.R. 776, 780-83 (N.D. Miss. 1989).

That the law affords these protections does not, however, mean that attaching the statutory labels to a debtor's proposed collateral sale is enough to deprive a recourse secured creditor like Baker Hughes of the § 1111(b) election. In implying otherwise, I believe the majority begs the ultimate

---

[2] In technical terms, the debtor must provide that the present value of payments under the plan at least equals the amount of the secured portion of the claim (11 U.S.C. § 506(a)), and that the total payments under the plan equal the full amount of the allowed claim. 11 U.S.C. § 1129(a)(7)(B); § 1129(b)(2)(A)(i)(II).

question whether the proposed sale actually effectuates a credit bid. Consider the following hypotheticals:

1. A debtor proposes to reorganize by a bulk sale of its manufacturing plant and assets to a third party. Separate liens exist on the facility, its machines, inventory, and the real property. This transaction could ensnare first lien secured creditors on the various pieces of collateral such that none could effectively credit bid for its discrete interest.

2. A real estate developer in Chapter 11 could propose selling several tracts, each with a separate lien, to one purchaser for a fixed price. Although the developer formulaically defines the sale as falling under § 363, no single secured creditor could protect its lien with a credit bid against the total package.

3. A debtor proposes to sell real property secured by liens "under the plan" "in the ordinary course of business" following reorganization but without any specifics for dates, prices, or methods of sale. The right to credit bid in connection with the plan is defeated.

In sum, § 1111(b) itself offers no guidance as to what constitutes a sale "under § 363" or "under the plan." *See Matrix Dev. Corp.*, 2009 WL 2169717, at\*2-3. All of these transactions could contradict the mutually reinforcing goals of §§ 363(k), 1111(b) and 1129(b)(2)(A) to protect secured creditors from the risks of erroneous judicial property valuations. Although few courts have tackled the implications of the credit bid requirements, they have generally sided with secured creditors and allowed § 1111(b)(2) elections in similar cases.[3]

---

[3] *See Matrix Dev. Corp.*, 2009 WL 2169717, at \*8 (§ 1111(b) election available where sales "under the plan" were indefinite and not substantially contemporaneous with confirmation); *Waterways Barge P'ship*, 104 B.R. at 782 (creditor was eligible to make § 1111(b) election where proposed plan prevented credit bid, but chose not to do so); *H&M Parmely Farms v. Farmers Home Admin.*, 127 B.R. 644, 646-650 (D.S.D. 1990) (creditor entitled to § 1111(b) election where sales "under the plan" went forward without credit bid opportunity).

No. 14-10768

I do not need to paint with a broad brush by offering definitive answers to the hypotheticals. Further, because of waiver, it is not necessary to determine whether, if properly analyzed, the election was correctly denied to Baker Hughes in the complex lien circumstances here. What it means to be a "sale under 363" or "under the plan" must be decided according to the transaction's ability to foster credit bidding. Courts should not over-read the majority opinion here to thwart such determinations.

Three points will assure proper development of the creditors' statutory protections. First, when a creditor timely asserts an § 1111(b) election to which objection is made, the court must settle the issue *before* the confirmation hearing. *See, e.g., Matrix Development*, 2009 WL 2169717, at *1. The court's decision will, after all, decisively affect the valuation to be placed on a particular creditor's secured claim and thus the requisites for plan confirmation. (Had the court done so in this case, it could have spurred negotiation or plan revisions or at least shed important factual light on the controversy.) Second, a secured creditor should be permitted to elect treatment under § 1111(b)(2) if the terms of the sale under § 363 or "under the plan" are found wanting in protection of its credit bid rights. Third, mindful that *RadLAX* as well as § 363(k) mandate the availability of credit bidding, prudent bankruptcy courts routinely order transparent, broadly publicized auction of debtors' assets that test the market for valuations as well as secured creditors' sincerity about credit bidding.[4] Such practices are to be commended.

---

[4] *In re Bigler L.P.*, No. 09-38188, (Bankr. S.D. Tex. 2010), ECF No. 353 (order granting debtor's motion for entry of an order (A) approving bidding and notice procedures related to sale(s) of substantially all of the debtor's assets; and (B) scheduling a hearing to consider the sale(s)) and *In re ATP Oil & Gas Corp.*, No. 12-36187, (Bankr. S.D. Tex. 2013), ECF No. 1272 (order, *inter alia*, (A) approving (i) bidding procedures; (ii) bid protections; and (iii) auction procedures), are good examples. Such orders, in contrast to the order here, also contain extensive provisions for credit bidding:

I concur in the judgment.

---

7. **Right to Credit Bid**

At the Auction, any Qualified Bidder who has a valid, stipulated lien on any Shelf Asset(s) (a "**Credit Bidder**") shall have the right to credit bid all or a portion of the value of such Credit Bidder's claims within the meaning of Section 363(k) of the Bankruptcy Code; <u>provided that</u>, a Credit Bidder shall have the right to credit bid its claim only with respect to the collateral by which such Credit Bidder is secured; <u>provided further that</u>, for purposes of the Qualified Bid, the Credit Bidder's claim shall be deemed to have the value it possesses on the date of the Auction (or otherwise established by the Bankruptcy Court).

*ATP Oil & Gas Corp.*, No. 12-36187, ECF No. 1272 (Exhibit 1 to order, *inter alia*, (A) approving (i) bidding procedures; (ii) bid protections; and (iii) auction procedures); *see also* Third Amended Plan of Reorganization, *In re Houston Reg'l Sports Network*, No. 13-35998, (Bankr. S.D. Tex. 2014), ECF No. 772 (containing two and a half pages of directions for a public auction of secured assets and specific protection of § 1111(b) election).